207 S.E.2d 152 (1974)
Anne R. COX
v.
Ruth Cox TURNER.
No. 13223.
Supreme Court of Appeals of West Virginia.
April 30, 1974.
Dissenting Opinion July 30, 1974.
*153 Donell, Tarr, DeLaMater & Hagg, W. Dean DeLaMater, Weirton, for appellant.
Edward A. Zagula, Weirton, for appellee.
NEELY, Justice:
This is an appeal from a final order of the Circuit Court of Hancock County by which the appellee, plaintiff below, Anne R. Cox, recovered a $10,500 judgment upon a jury verdict against the appellant, Ruth Cox Turner, for the negligent practice of law.
In October 1967 the plaintiff was injured by an uninsured motorist and sustained a fractured clavicle. The plaintiff was taken to the East Liverpool City Hospital in East Liverpool, Ohio where she engaged the services of her personal physician, Melborne P. Burnett, M.D., for treatment. She remained in the East Liverpool City Hospital for ten days and was discharged with instructions to see Dr. Burnett in his office three weeks later. However, the plaintiff was suffering great pain and was anxious concerning the efficacy of Dr. Burnett's treatment; therefore, she consulted Dr. Leonard E. Yurko who admitted her to Weirton General Hospital in Weirton, West Virginia, and performed certain operative procedures. Dr. Yurko hospitalized the plaintiff again in June 1968, and as a result of these periods of hospitalization the plaintiff lost several thousand dollars in wages and incurred extensive medical bills and child care expenses.
The plaintiff initially retained the defendant as her attorney to pursue remedies against the uninsured motorist and, ultimately, the plaintiff and the defendant, as plaintiff's attorney, turned to the Nationwide Insurance Company under the Uninsured Motorist Coverage of the plaintiff's own automobile policy and negotiated a settlement with Nationwide for $5,500. This *154 settlement was in addition to a $1,000 medical payment made under the medical payment provision of the plaintiff's policy, and the record indicates that the $5,500 settlement was based upon bills submitted to Nationwide for medical expenses, housekeeping expenses, personal property damage and lost wages.
During the course of defendant's representation of plaintiff in the negotiations with Nationwide plaintiff retained the defendant on a contingent fee basis to bring an action for malpractice against Dr. Burnett. At the time plaintiff retained the defendant such an action would not have been barred by the Ohio Statute of Limitations. The defendant, however, was unmindful that an Ohio statute of limitations bars a malpractice action after one year (para. 2305.11 Pages Ohio Revised Code Annotated) and defendant failed to prosecute the plaintiff's action within the statutory period.
In October 1969 the plaintiff instituted this action in the Circuit Court of Hancock County against the defendant for legal malpractice and the action was tried upon the theory that defendant would only be liable if plaintiff proved a case of malpractice against Dr. Burnett. After a trial in which evidence was introduced concerning Dr. Burnett's negligence, as well as defendant's negligence in permitting the statute to run, and upon proper instructions by the trial court, the jury found in favor of the plaintiff for $10,500, and judgment was entered against the defendant in that amount.
The defendant, in her amended answer, set forth the defense that the settlement with Nationwide Insurance Company barred plaintiff from seeking further compensation. At the pre-trial conference the defendant argued that should the settlement with Nationwide not be considered a complete bar, the defendant should at least be entitled to a setoff in the amount of Nationwide's payment.
Under the two alternative theories, one of bar and the other of setoff, the trial court permitted the defendant to introduce evidence, outside of the presence of the jury, concerning the settlement made by Nationwide. Based upon this testimony the defendant made a post-trial Motion for Judgment and for Partial Satisfaction which was overruled on the grounds that a certain Release and Trust Agreement, quoted infra, given Nationwide in settlement of plaintiff's claim under the Uninsured Motorist Coverage was not a release of the original tort-feasor, and that as the plaintiff had paid for the Uninsured Motorist Coverage, the amount which she received from Nationwide was similar to medical payments under hospitalization or accident insurance and, therefore, exempt from liability to setoff under the "Collateral Source Rule."
In this Court the defendant has assigned as error the trial court's ruling on the Motion for Judgment and for Partial Satisfaction and has raised two questions of law: (1) Does a release of an insurance company under the Uninsured Motorist Coverage of an insurance policy constitute a release as to all joint tort-feasors? and, (2) If a release does not constitute a bar to an action against other joint tort-feasors, are the other joint tort-feasors entitled to a setoff in the amount of the recovery from the insurance carrier?
The Release and Trust Agreement between plaintiff and Nationwide Insurance Company provided in pertinent part as follows:
". . . That, for the sole consideration of the sum of Five Thousand Five Hundred Dollars ($5,500.00), receipt of which from the Nationwide Insurance Company, designated below (hereinafter called "Nationwide") is hereby acknowledged, the undersigned in her capacity as an insured . . . hereby releases, discharges, and for herself, her heirs, executors, administrators, successors and assigns does forever release and discharge Nationwide of and from all claims of whatsoever kind and nature prior to and including the date hereof growing out of *155 the Uninsured Motorist Coverage of an Automobile Insurance Policy number XX-XXX-XXX issued by Nationwide to Anne R. Cox, and resulting or to result from an accident which occurred on October 15, 1967, at or near Carolina Ave., Chester, W. Va.
"And further: In consideration of such payment, the undersigned, for herself personally . . . agrees to take, through any representative designated by Nationwide, such action as may be necessary or appropriate to recover the damages suffered by the undersigned . . from any person or persons, organization, association or corporation other than Nationwide who or which may be legally liable therefor and to hold any monies recovered from such person or persons, organization, association or corporation as a result of judgment or as a result of settlement with or without litigation, in trust for Nationwide to be paid to Nationwide immediately upon recovery thereof; provided, however, that any sum recovered in excess of the amount paid to the undersigned by Nationwide as consideration for this Release and Trust Agreement plus all expenses, court costs and attorney fees in connection therewith shall be retained by the undersigned and. . . the undersigned hereby agrees to reimburse, indemnify and save harmless said Nationwide against any further claims under said policy resulting from the above accident . . . hereby waiving any and all rights of exemption, both as to real and personal property, to which the undersigned may be entitled by the laws of any state as against such claims for reimbursement or indemnity." [Emphasis supplied]
In order for a release of one joint tort-feasor to bar an action against another joint tort-feasor, it must appear from the terms of the release that the injured party acknowledged complete satisfaction for all of his injuries. Conley v. Hill, 115 W.Va. 175, 174 S.E. 883 (1934). In the case at bar the release given by the plaintiff, Mrs. Cox, to Nationwide indicated on its face that the release was exclusively a release of the insurance company from liability under the Uninsured Motorist Coverage, and not a release of the uninsured motorist himself, as the release makes provisions for subrogation and expressly contemplates a recovery against the motorist in excess of the settlement amount. The provision in the release for a suit against the motorist indicates that the original tort-feasor was not given an unqualified release, nor for that matter any release at all. Nationwide's payment was not made to Mrs. Cox on behalf of the uninsured motorist; rather, it was made in settlement of a direct liability to Mrs. Cox arising ex contractu, albeit predicated upon the ultimate liability of the uninsured motorist. This point becomes evident when it is realized that Mrs. Cox could retain the $5,500 from Nationwide in spite of the potential exoneration of the uninsured motorist in a subsequent subrogation suit. Therefore, as Mrs. Cox did not execute an unqualified release indicating that she had been compensated for all of her injuries, we hold that the settlement between Mrs. Cox and Nationwide was not a bar to a subsequent action against Dr. Burnett.
The trial court held that the settlement received from Nationwide should be exempted from setoff because plaintiff paid the insurance premiums and, therefore, the Uninsured Motorist Coverage proceeds are exempt from consideration in mitigation of damages under the Collateral Source Rule. This Court disagrees with that interpretation of the law. Although the plaintiff paid the premiums on the policy, Chapter 33, Article 6, Section 31 of the Code of West Virginia, 1931, as amended, which requires all automobile liability policies to include Uninsured Motorist Coverage predicates recovery under that coverage upon negligence of the uninsured motorist. Accordingly, the insurance company which agrees to a settlement with a policyholder under the Uninsured Motorist Coverage is entitled to subrogation against the uninsured *156 motorist. Therefore, this Court holds that any money received under the Uninsured Motorist Coverage must be considered as partial satisfaction for the total injury and appropriately set off against any subsequent recovery either from the uninsured motorist or another joint wrongdoer.
At the trial of this case evidence was introduced concerning all of the plaintiff's damages arising from the accident, with the exception of a few minor lacerations of a de minimus nature. A review of all of the evidence indicates that the jury had before it all of the plaintiff's special damages, and the court instructed the jury that they could return a verdict for all medical services and for lost wages. In support of defendant's motion for a setoff, the court alone heard testimony that Nationwide predicated its settlement with plaintiff upon plaintiff's special damages. Mr. Randall McKinney, the insurance adjuster for Nationwide, testified that of the $5,500 settlement, $4,871.18 were for special damages such as medical bills and lost wages. The total special damages suffered by plaintiff were $5,817.18; however, Nationwide paid $1,000 under the medical payment provision of the policy, and took that payment into consideration in negotiating the settlement.
This Court held in the case of Hardin v. New York Central Railroad Company, 145 W.Va. 676, 116 S.E.2d 697 (1960) in Syllabus Point 2 that "where a payment is made, and release obtained, by one joint tort-feasor, other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong." It has long been the rule that a plaintiff who has a cause of action against joint tort-feasors is entitled to full satisfaction, but is entitled to only one satisfaction. Therefore if one joint tort-feasor makes a settlement with a plaintiff, the amount of the settlement, if properly presented during or after the trial, should be deducted either by the jury or by the court. Bloss v. Plymale, 3 W.Va. 393 (1869); New River and Pocahontas Consolidated Coal Company v. Eary, 115 W.Va. 46, 174 S.E. 573 (1934). A payment by one joint tort-feasor is a satisfaction pro tanto, as to all. Tennant v. Craig, W.Va., 195 S.E.2d 727 (1973). Therefore, where a partial payment is made by or on behalf of one tort-feasor who has proximately contributed to plaintiff's injuries, other tortfeasors who contributed to plaintiff's injuries shall be given credit for that amount in the satisfaction of the total wrong. Hardin v. New York Central, supra. This rule is necessary in order to permit joint tort-feasors to apportion the liability among themselves. As stated by Mr. Justice Sprouse in his concurring opinion in Jones v. Laird Foundation, Inc., W.Va., 195 S.E.2d 821 (1973), the rule that an original wrongdoer was responsible not only for the original injury but for any subsequent medical malpractice was not designed to protect a negligent doctor, but rather to make it simpler to prove total damages in a personal injury case. A corollary to that proposition is that should a plaintiff recover completely against an original wrongdoer, the wrongdoer is entitled to bring an action against the doctor for so much of the total injury as was proximately caused by the doctor, and any rule which entitled a victim to more than one full satisfaction would disrupt further proceedings to fix liability among joint tort-feasors.
In the case of Hardin v. New York Central, supra, this Court approved three methods of disposing of partial settlements. First, evidence of the settlement may be introduced, and the jury may be instructed that they must deduct the amount of such settlement from their final verdict; second, all of the damages may be proved during trial, and after a verdict is returned and judgment is entered, the defendant may introduce evidence of partial satisfaction when an effort is made to satisfy the judgment; and third, the parties may stipulate the amount of the settlement and the court may use it as a credit to be deducted from the jury's verdict before entering judgment. *157 Although no stipulation was made in the case at bar, under the third method of establishing a setoff a post-trial motion for setoff is proper, and where it appears, as in this case, that a payment by or on behalf of another wrongdoer was in partial satisfaction of the injuries for which the verdict was returned, the trial court must take such payment into consideration as a setoff in entering judgment on the jury verdict.
Accordingly, the judgment of the Circuit Court of Hancock County is reversed in part and the case is remanded with instructions to grant defendant's motion for a setoff in the amount of $5,500 and enter judgment on the jury verdict in accordance with such setoff.
Reversed and remanded.
SPROUSE, Justice (dissenting):
I respectfully dissent from that portion of this decision which holds the $5,500 settlement to be a partial satisfaction of the $10,500 jury verdict. I believe the discussion of the liability of joint tort-feasors has confused the issue in this case.
The amount of damages for which the defendant attorney was responsible was predicated on the amount that would have been recoverable against the malpractitioner doctor. The plaintiff could have recovered from the doctor only for the injury which he alone inflicted. Potential damages in a suit against the original tort-feasor theoretically could have included those same damages, but the reverse is not true. Damages obtainable in a suit against the doctor would not necessarily include those damages covered by the original tort-feasor. Prosser, Torts, Section 52, pages 320-21 (4th Ed.). Settlement of a damage claim against the original tort-feasor would not have been, in this instance, a partial satisfaction of the claim against the malpractitioner doctor. It could not, therefore, be a partial satisfaction of the claim against the malpractitioner attorney.