420 S.E.2d 286

Michael Alan BILLITER, Plaintiff Below, Appellant,

v.

MELTON TRUCK LINES, INC., a Corporation, and Horace Ulyesses Keene, Defendants Below, Appellees.

No. 20490.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1992.

Decided July 16, 1992.

E. Scott Stanton, Breckinridge, David, Sproles & Stollings, Summersville, for appellant.

Elliot G. Hicks, Kay, Casto, Chaney, Love & Wise, Charleston, for appellees.

PER CURIAM:

This is an appeal by Michael Alan Billiter from a November 29, 1990, order of the Circuit Court of Nicholas County reflecting a jury verdict adjudging the appellant forty percent negligent in causing an accident which formed the basis for this action. The appellant also appeals the lower court's March 12, 1991, denial of his motion for a new trial and motion for judgment notwithstanding the verdict. The appellant contends that the lower court committed various errors which justify a reversal. We disagree and affirm the decision of the circuit court.

## I.

On the evening of October 6, 1987, the appellant, an independent truck driver contracting with Cooper Motor Lines of South Carolina, was operating his vehicle in a southbound direction on U.S. Route 19 in Nicholas County, West Virginia. As the appellant was travelling down Powell's Mountain, he noticed another truck attempting to enter the main roadway from a side road, old Route 19. The appellant's testimony indicated that although he saw the truck when he was nearly one hundred yards from the intersection and began to brake immediately, he was unable to stop his vehicle in time to avoid the collision with the trailer of the other vehicle. The driver of that other vehicle was appellee Horace Ulyesses Keene. Deputies Ron Clutter and James Evans of the Nicholas County Sheriff's Department investigated the accident and determined that Mr. Keene was at fault.

The appellant's injuries prevented him from driving for approximately two to three weeks, and he experienced back pain and stiffness which made driving impracticable for several weeks thereafter. The appellant negotiated with Mr. Keene's trucking company, Melton Truck Lines, for the damages to his truck. Upon the appellee's inability to obtain any payment through Melton Truck Lines, he contacted Illinois Insurance Exchange, the insurer for Cooper Motor Lines. On January 11, 1988, the appellant signed a sworn "Sworn Statement in Proof of Loss," agreeing to accept $13,679.85 as payment from Illinois Insurance Exchange for the damages to his vehicle. The appellant also signed a "Statement of Loss" and "Release and Authorization to Pay" in which he agreed to accept the $13,679.85 and to release Illinois Insurance Exchange from any further liability to him. The release also contained a

section entitled "Loan Receipt" which obligated the appellant to pledge to the Illinois Insurance Exchange any recovery from "any person or persons, corporation or corporations, or other parties on account of loss by collision to my/our property on the 6th day of October 1987."[1]

In January 1989, Illinois Insurance Exchange released appellees Melton Truck Lines and Horace Keene from all liability resulting from the accident for the amount of $10,259.89. The appellant was not a party to this release and had no personal knowledge of the signing of the release. During this same period, the appellant and his attorney were negotiating with Melton Truck Lines in an attempt to settle the appellant's claim for damages.

On November 7, 1990, the parties agreed that the issue of the effect of Illinois Insurance Exchange's release of Melton Truck Lines needed to be briefed and argued before the court. After hearing the arguments of counsel, the lower court ruled that the appellant had been compensated for the damages to his truck by Illinois Insurance Exchange and that the release between Illinois Insurance Exchange and Melton Truck Lines served as a valid release of Melton Truck Lines from any and all liability to the appellant for damages to the appellant's truck.

A trial on this matter was conducted on November 13 and 14, 1990. By ruling dated November 7, 1990, the lower court determined that no evidence would be permitted regarding damages to the truck since the appellees had been released from liability for such damages. At trial of the personal injury claims, the jury determined that the appellant was forty percent negligent in causing the accident and rendered a verdict in the amount of $11,828.[2]

The appellant assigns the following errors: 1) the lower court erred in its pretrial ruling that the release between Illinois Insurance Exchange and Melton Truck Lines effectively released the appellees from any responsibility to the appellant for damages to his truck; 2) the lower court erred by failing to instruct the jury to disregard statements made by counsel for the appellees in closing argument concerning the distance between the two vehicles before the accident and in failing to review the record pursuant to the appellant's objection and request; 3) the lower court erred in instructing the jury regarding negligence on the part of the appellant when no such evidence was presented by competent testimony; 4) the lower court erred by permitting the appellees to argue and present evidence concerning the appellant's income tax return as representative of his income; 5) the lower court erred in failing to permit the appellant's witness, the police officer who investigated the accident, to testify as to his opinion regarding the individual who had caused the accident; 6) the lower court erred by limiting testimony of the appellant's witnesses concerning annoyance and aggravation suffered by the appellant.

## II.

The appellant contends that he did not intend to assign to Illinois Insurance Exchange the sole authority to negotiate with Melton Truck Lines and that Illinois Insurance Exchange's release of Melton Truck Lines was therefore invalid. Further, the appellant contends that the lower court failed to consider that Melton Truck Lines had full knowledge, at the time of its release by Illinois Insurance Exchange, that the appellant was making claims against it. The appellant also contends that he did not understand the documents he signed to constitute an assignment of rights regarding all damages to the truck. The appellant argues that the exclusion of the evi-

1. The loan receipt portion of the document is reproduced in its entirety in a subsequent portion of this opinion. *See infra* at 187 W.Va. at 528–529, 420 S.E.2d at 288–289.

2. The jury found the appellant 40 percent negligent and Horace Keene and Melton Truck Lines 60 percent negligent. The jury also calculated the $11,828 award as follows: $528 agreed medical and pharmaceutical expenses, $9,500 lost earnings, $0 pain and suffering, $0 annoyance and aggravation, and $1,800 miscellaneous. The appellant contends that the jury should also have been permitted to address the issue of damages to his truck.

dence regarding damages to his truck, based upon the release of Melton Truck Lines, prejudiced him.

The loan receipt signed by the appellant provided, in its entirety, as follows:

RECEIVED FROM _____ [Illinois Insurance Exchange] hereinafter referred to as insurers and/or Underwriters, the sum of Thirteen Thousand Six Hundred Seventy–Nine and 85/100 Dollars, as a Loan, without interest, under Policy No. DOL–100605, repayable only in the event and to the extent that any net recovery is made by me/us from any person or persons, corporation or corporations, or other parties on account of loss by collision to my/our property on the 6th day of October 1987. As security for such repayment as we hereby pledge to said insurers and/or Underwriters whatever recovery I/we make, and deliver to it herewith all documents necessary to show my/our interest in said property and I/we hereby agree promptly to present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations through whose negligence the aforesaid loss was caused or may otherwise be responsible therefore, with all due diligence in my/our own name but at the expense and under the exclusive direction and control of the said insurers and or Underwriters. It is further agreed that the insurers and/or Underwriters herein named or their authorized agent, representative or attorney shall have the authority to endorse and/or sign releases and drafts and receipts for all monies in any manner accruing to the benefit of the undersigned from or out of any subrogation actions arising under the above numbered policy. The undersigned and/or assured does hereby warrant that no releases will be given or settlement or compromise made or agreed upon with any third party who may be liable to the undersigned with respect to any claims made under the above numbered policy. This agreement is irrevocable.

The appellant contends that the lower court erred by concluding that the release by Illinois Insurance Exchange of the appellees was valid and served to release the appellees from all liability for damages to the appellant's truck. The appellant emphasizes that he was not a party to the release and that he was not involved in negotiations between the appellees and Illinois Insurance Exchange.

The documents signed by the appellant do not appear to be ambiguous in any regard. They simply evidenced the agreement that Illinois Insurance Exchange would give the appellant $13,679.85 with the understanding that repayment would be made to the extent that the appellant recovered against any negligent parties through a civil action "at the expense and under the exclusive direction and control" of Illinois Insurance Exchange. That provision served to inform the appellant that any civil action to be maintained, while styled in his name, would be orchestrated by Illinois Insurance Exchange. Moreover, the nature of the authorization of Illinois Insurance Exchange to negotiate any additional recovery is further enunciated in the following sentence which provides that Illinois Insurance Exchange "shall have the authority to endorse and/or sign releases and drafts and receipts for all monies in any manner accruing to the benefit of ... [the appellant] from or out of any subrogation actions arising under the above numbered policy." Further, the appellant agreed that he would not release, settle, or compromise "with any third party who may be liable to ... [the appellant]...."

We do not believe that the agreement between the appellant and Illinois Insurance Exchange presents any basis upon which the appellant can now premise his contentions. The appellant appears to ignore the operative language regarding Illinois Insurance Exchange's "authority to endorse and/or sign releases and drafts and receipts for all monies in any manner accruing to the benefit of ... [the appellant]" and argues that despite the grant of authority to Illinois Insurance Exchange, the settlement between Illinois Insurance Exchange and the appellees is invalid. Very simply, the appellant, as the insured,

granted authority to Illinois Insurance Exchange to sign releases in exchange for the $13,679.85 payment for damages to his truck.

We believe that Illinois Insurance Exchange and the appellees executed a valid release whereby, for the sum of $10,259.89, the appellees would be relieved of all liability for damages to the appellant's truck. The personal injury claim was not settled in that release, and it was later tried by the lower court.

■ The appellant relied upon our decision in *Cox v. Turner*, 157 W.Va. 802, 807, 207 S.E.2d 152, 155 (1974), for the proposition that the payment by the injured party's insurer and a release from the insured party to his insurer does not relieve the tortfeasor from his obligations in the event of a subrogation suit by the insurer against the tortfeasor. While that proposition is accurate, the *Cox* decision does not imply that the insurer is prohibited from proceeding against the tortfeasor and giving an effective release of the insured's claims, where, as in the present case, the insurer has been given the right and authority to sign releases for all monies which might accrue.

■ This is not a scenario in which ambiguity of a contractual agreement is encountered. We find no need to deviate from the precise language employed in the contract and believe the appellant's arguments of invalidity to be untenable. We have previously stated that " '[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' Syllabus point 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962)." Syl.Pt. 1, *Cabot Oil & Gas Corp. v. Pocahontas Land Corp.*, 180 W.Va. 200, 376 S.E.2d 94 (1988); *accord* Syl.Pt. 1, *Melbourne Bros. Constr. Co. v. Pioneer Co.*, 181 W.Va. 816, 384 S.E.2d 857

(1989). As explained above, we find no ambiguity in the contract in question, and we find the agreement complete on its face and plain and unambiguous in its terms. We therefore adhere to its plain meaning and hold that all documents executed between the appellant and Illinois Insurance Exchange were valid, that they authorized Illinois Insurance Exchange to enter into the release with the appellees, and that such release acted to relieve the appellees from all liability for damage to the appellant's truck.

## III.

■ The appellant also contends that the officer whom the appellant sought to qualify as an expert should have been permitted to testify regarding his opinion as to the cause of the accident. One of the two officers who investigated the accident, Deputy Ron Clutter, is now deceased. The appellant called Deputy James D. Evans to testify regarding the investigation of the accident. In direct examination, Deputy Evans testified that he had specialized training in accident investigation. Upon appellant's counsel's subsequent inquiry regarding the cause of the accident, the appellees' counsel objected based upon the appellant's failure to lay a proper foundation for qualification as an expert. The appellees further objected on the basis that the officer could not testify regarding his opinion on the ultimate issue of which party was at fault. The lower court, apparently not satisfied that the witness demonstrated sufficient knowledge of accident investigation or evaluation of this particular accident to qualify as an expert, stated that the witness had not been properly qualified.[3] Appellant's counsel did not elicit additional testimony demonstrating that the witness had a sufficient base of knowledge to render an opinion.

■ We have consistently held the following: " ' "Whether a witness is qualified to state an opinion is a matter which rests

---

**3.** Appellant's counsel inquired of Deputy Evans regarding any measurements, drawings, or diagrams of the positions of the vehicles. Deputy Evans indicated that one of the vehicles had

been moved prior to his arrival and that he did not have any drawings or diagrams of the original accident positions.

within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Point 5, syllabus, *Overton v. Fields,* 145 W.Va. 797[,] [117 S.E.2d 598 (1960) ].' Syllabus Point 4, *Hall v. Nello Teer Co.,* 157 W.Va. 582, 203 S.E.2d 145 (1974)." Syl.Pt. 12, *Board of Educ. v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990). We believe that the record supports the lower court's ruling that a proper foundation had not been presented for the qualification of Deputy Evans as an expert. The denial of qualification was based not only upon Deputy Evans' lack of sufficient testimony regarding his training of accident reconstruction in general, but also upon counsel's failure to elicit testimony indicating that he had investigated this particular accident to a sufficient extent to offer an opinion regarding fault.

■ We have also considered the appellant's additional assignments of error and have found them to be unmeritorious. The appellant has contended that the lower court erred in failing to instruct the jury to disregard certain statements made by counsel for the appellees in closing argument concerning the distance between the two vehicles before the accident and in failing to review the record pursuant to the appellant's objection and requests. This contention is based upon counsel for the appellees' statement in closing argument that the appellant testified that he first saw the appellees' truck "at about one hundred feet away." Appellees' counsel then proceeded to calculate reaction time based upon a forty-five mile per hour speed and the appellant's recognition of the vehicle from one hundred feet away. In actuality, the appellant had testified that he saw the appellee from a distance of one hundred yards. Appellant's counsel objected, and after a brief discussion, the lower court determined that it would leave the proper recollection of the testimony to the jury. Counsel for the appellees thereafter apologized for any misstatement he may have made and further supplied a recalculation of reaction time based on the one hundred yard figure. We find that the misstatement of that testimony by appellees' counsel was harmless, and we are not persuaded by the appellant's contentions to the contrary.

■ The appellant also alleges that there was no evidence to support instructions to the jury concerning the appellant's own negligence. The appellees, however, presented ample evidence that the conditions existing at the time of the accident required special care by any individual driving a vehicle on that evening. Evidence was presented indicating that weather conditions included rain, fog, and reduced visibility. Based upon the evidence presented, we find no error in the court's instructions indicating that the law requires a driver of an automobile to keep a reasonable lookout for other automobiles, forbids a person from driving a vehicle on a highway at a speed greater than is reasonable under the circumstances existing, and requires the driver of a vehicle approaching an intersection where a special hazard exists to reduce his speed appropriately.

■ Finally, the appellant also alleges that the court erred in permitting the appellee to argue and present evidence concerning the appellant's income tax return as representative of his income, "when such returns did not reflect income but reflected deductions and depreciation permitted by self-employed individuals." We find no error in the introduction of such income tax statements, and conclude that any irregularities in the amounts indicated on the returns or special circumstances existing by virtue of the appellant's self-employment could adequately have been presented by the appellant. The introduction of the returns themselves, as a portion of the calculation of economic damages, was not in error.

Based upon the foregoing, we conclude that the Circuit Court of Nicholas County committed no errors justifying reversal, and we hereby affirm its judgment.

Affirmed.