· 445 S.E.2d 192

**HARDY COUNTY BOARD OF EDUCATION, Plaintiff Below, Appellee,**

v.

**WEST VIRGINIA DIVISION OF LABOR, Defendant Below, Appellant.**

**No. 21681.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1994.

Decided May 23, 1994.

William D. Moomau, Pros. Atty. for Hardy County, Moorefield, for appellee.

Paul F. Mullen, Asst. Atty. Gen., Charleston, for appellant.

WORKMAN, Justice:

This case is before the Court upon the appeal of the West Virginia Division of Labor (hereinafter referred to as Division) from the July 27, 1992, final order of the Circuit Court of Hardy County which found that the 1992[1] Hardy County prevailing wage rates as determined by the Appellant for building construction of public improvements violated West Virginia Code § 21–5A–5(1) (1989).[2] The Appellant alleges that the circuit court erred in vacating the findings of fact and conclusions of law made by the Commissioner of the Division of Labor (hereinafter referred to as Commissioner) because the Commissioner's decision was supported by the evidence and was not clearly wrong. Based upon a review of the record, the parties' briefs and arguments and all other matters submitted before the Court, we agree with the Appellant's contentions and reverse the lower court's decision.

## I.

The Wages for Construction of Public Improvements Act, West Virginia Code § 21–5A–1 to –11 (1989 & Supp.1993) ensures that public authorities pay "no less than the prevailing hourly rate of wages for work of a similar character in the locality" to workers performing their construction projects. W.Va.Code § 21–5A–2. West Virginia Code § 21–5A–5(1) requires the Division to "determine the prevailing hourly rate of wages in the localities in this State" annually. Pursuant to this statute, the Division investigates and determines the prevailing wage rates for hundreds of construction job classifications for each of the fifty-five counties in this State. This case originated when the Appellee, the Hardy County Board of Education (hereinafter referred to as the Board), timely objected to the prevailing wage rates as determined by the Appellant. See W.Va. Code § 21–5A–5(3). Pursuant to the Appellee's objections, a hearing in which both parties submitted evidence was conducted by the Division, with the Commissioner presiding. See W.Va.Code § 21–5A–5(4) and (5).

At the hearing conducted by the Commissioner, Marsha Bone and Steve Davis, both compliance officers with the Division, testified that beginning in September of 1991 the Division conducted its investigation by soliciting from private individuals, labor organizations and public authorities in each county wage rate information for 1991. The Division also sent a letter to the county courthouse for posting and notified any available local media outlets so that the interested public could participate by submitting pertinent information.[3] The Division gave an Oc-

---

**1.** The data used for the 1992 prevailing wage rates was collected during calendar year 1991 and the rates were filed with the Secretary of State on January 6, 1992.

**2.** West Virginia Code § 21–5A–5(1) provides:

(1) The department of labor, from time to time, *shall* investigate and determine the prevailing hourly rate of wages in the localities in this State. Determinations thereof *shall* be made annually on January one of each year and shall remain in effect during the successive year: Provided, however, that such rates shall not remain in effect for a period longer than fifteen months from the date they are published.

In determining such prevailing rates, the department of labor *may ascertain and consider the applicable wage rates established by collec-*

*tive bargaining agreements, if any, and such rates as are paid generally within the locality in this State where the construction of the public improvement is to be performed.* (emphasis added).

**3.** It is important to note that since the time the wage rate survey at issue was conducted, the West Virginia Contractor Licensing Act has gone into effect. See W.Va.Code §§ 21–11–1 to –19 (Supp.1993). That statute required that all in-state and out-of-state contractors engaging in contracting in West Virginia be licensed, thus creating a database which lists all in-state and out-of-state licensed contractors. The Division began using this database with the subsequent wage rate survey, conducted in the fall of 1992. With this survey, all yearly license renewal applications included a request for information by the

tober 1991 deadline for receiving the information regarding wage rates. According to the compliance officers' testimony, the only timely received information concerning wage rates was contained within collective bargaining agreements sent in by various unions.[4] No division of Hardy County government, including the Board, submitted information during the wage rate survey.

The evidence presented by the Appellee consisted solely of three one-page letters addressed to John Miller of the Board from out-of-state contractors. The first of those letters, dated February 7, 1992, was from Harmon Construction Incorporated of Harrisonburg, Virginia. A construction manager for Harmon indicated that work was being performed on a project for American Woodmart in Moorefield, West Virginia. The letter offered a range of hourly rates for carpenters and laborers, and stated an approximate number of people working within these ranges. The second letter, dated February 10, 1992, was from Trumbo Electric, Inc. of Broadway, Virginia. This letter offered three classifications of electricians stating that the three wage rates listed were averages of rates paid for non-public jobs in the Hardy County area. Moreover, the letter indicated that an additional fifteen percent should be added to the base rate for fringe benefits. The last letter was submitted by Broadway Electric, Inc. of Broadway, Virginia. That letter offered four classifications of electricians and stated that the company had six employees working at the Wampler–Longacre Plant Expansion in Moorefield, West Virginia. After hearing all the evidence submitted by both parties, the Commissioner ruled in favor of the Appellant, holding that the prevailing wage rates were fair and equitable.

The Appellee appealed the Commissioner's decision to the Circuit Court of Hardy County pursuant to West Virginia Code § 21–5A–5(8). The circuit court found that the prevailing wage rates as determined by the Appellant

> were arbitrarily and capriciously determined only by the use of union collective bargaining agreements, which obviously exceeded the true hourly rates for Hardy County and not through the use of any rates generally paid within Hardy County, which rates were readily available, but not in good faith sought to be determined by [Appellant]. . . .

Thus, the circuit court reversed and vacated the Commissioner's findings of fact and conclusions of law.

## II.

The only issue before the Court is whether the circuit court erred in vacating and reversing the Commissioner's findings of fact and conclusions of law. The Appellant argues that the circuit court's ruling that the Division improperly considered only collective bargaining agreements and improperly failed to consider and determine in good faith the wage rates generally paid within Hardy County in its determination of the 1992 Hardy County prevailing wage rates was contrary to West Virginia Code § 21–5A–5(1) which does not compel the Division to consider all conceivable evidence or give any particular weight to any one type of evidence. Further, the Appellant asserts that the Commissioner's findings were supported by evidence and were not clearly wrong.[5] In contrast, the Appellee contends that the Appellant determined the prevailing wage rates

---

Division regarding the prevailing wage rates paid by the applicant. According to the Appellant, any information obtained as a result of this survey is now included in the wage rate survey by the Division.

4. The Appellant introduced numerous exhibits in evidence to support the compliance officers' testimony about the wage rate information that was received by the Division.

5. This ancillary matter was raised by the Appellant since the circuit court vacated all the Commissioner's findings of fact regarding the 1992 prevailing wage rates for Hardy County when the

Appellee only presented contradictory evidence concerning carpenters, laborers and electricians. Consequently, the circuit court overturned rates even when no contrary evidence was presented simply because the Division utilized collective bargaining agreements.

Pursuant to West Virginia Code § 29A–5–4(g) (1993) a circuit court shall reverse or vacate administrative findings when such findings are contrary to the law, in excess of the agency's authority or jurisdiction, based upon unlawful procedures, clearly wrong in view of the whole record or made arbitrarily and capriciously. Based upon the record before the Court and in

solely by using union collective bargaining agreements; and, the Appellant did not conduct a true investigation for the purpose of determining the prevailing wage rates in Hardy County.

West Virginia Code § 21–5A–5(1) provides, in pertinent part, that "[t]he department of labor ... *shall* investigate and determine the prevailing hourly rate of wages in the localities in this State." Moreover, those "[d]eterminations ... *shall* be made annually...." W.Va.Code § 21–5A–5(1) (emphasis added). Finally, the statute provides that when the Division is ascertaining the prevailing wage rates, it *"may* ascertain and consider the applicable wage rates established by collective bargaining agreements, if any, and such rates as are paid generally within the locality in this State where the construction of the public improvement is to be performed." W.Va.Code § 21–5A–5(1) (emphasis added).

The crux of the issue before the Court is that while West Virginia Code § 21–5A–5(1) does mandate that the Division shall undertake an investigation, the statute neither specifies how the investigation should be conducted nor specifies the types of information the Division should gather during an investigation. The only guidance that West Virginia Code § 21–5A–5(1) does provide is that when the Division is determining prevailing wage rates, it *may* consider not only wage rates contained within collective bargaining agreements but also wage rates which are paid generally within the locality where the construction of a public improvement is to take place. The Appellant maintains that although the 1992 rates for Hardy County were determined solely by collective bargaining agreements, that methodology is not a violation of West Virginia Code § 21–5A–5(1), where the collective bargaining information was the only information that the Division received. The Appellee, however, contends that the statutory language is clear that if the Division considers rates established by collective bargaining agreements, then it must also not only consider wage rates paid generally within the locality but also make a good faith attempt to ascertain what these wage rates are in the locality.

Contrary to the Appellee's position and the circuit court's decision, West Virginia Code § 21–5A–5(1) does not mandate that the Division use any particular methodology when conducting the statutorily-mandated investigation of the prevailing wage rates. The statutory provision only requires the Division to conduct an investigation. *See* W.Va.Code § 21–5A–5(1). The use of the word "may" in the statute as it relates to the types of information the Division can acquire during an investigation merely gives the Division the discretion to use the wage rates contained within collective bargaining agreements, as well as wage rates paid generally within the locality where the construction of a public improvement is to be performed as two potential sources of information from which data can be collected concerning prevailing wage rates. *See Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbh v. Starcher,* 174 W.Va. 618, 626, 328 S.E.2d 492, 500 n. 12 (1985) ("An elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion.")

In the present case, the record is clear that the Division did conduct an investigation as mandated by West Virginia Code § 21–5A–5(1). The Division perhaps could be said to have abused its discretion in the conduct of such investigation had the collective bargaining agreements been the only information sought. Here, however, the Division did solicit information from a cross-section of other sources, and cannot be faulted for the failure of the other sources to respond. If the Board had information on the 1992 prevailing wage rates, for example, it had the opportunity to respond and provide additional information, but failed to do so. Similarly, no other entity bothered to submit other information or data.

Given that " '[i]nterpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous[,]' " the circuit court erred in reversing and vacating the Commissioner's findings of fact and conclusion of law. Syl. Pt. 1, *Dillon v. Bd. of Educ.,* 171 W.Va. 631,

light of this Court's interpretation of West Virginia Code § 21–5A–5(1), none of the factors found in West Virginia Code 29A–5–4, which would

justify the circuit court vacating the Commissioner's findings of fact, existed and accordingly, the circuit court erred in doing so.

256

301 S.E.2d 588 (1983) (quoting Syl. Pt. 4, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp., Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982)).

The fact that a database of in-state and out-of-state contractors is currently available as a result of the enactment of West Virginia Code §§ 21–11–1 to –19 now assures that a broader cross-section of entities will be surveyed. The duty to investigate prevailing wage rates set forth in West Virginia Code § 21–5A–5(1) is met when the Division generally solicits wage rate information from a cross-section of the community and specifically solicits wage rate information from entities, reasonably expected to have said knowledge, which are identified through any databases that are readily available for use by the Division.

Based on the foregoing, the decision of the Circuit Court of Hardy County is hereby reversed and remanded for the entry of an order consistent with this opinion.

Reversed and remanded.