460 S.E.2d 702

**Mary AKERS and Charlene Boggs, Petitioners Below, Appellants,**

v.

**WEST VIRGINIA DEPARTMENT OF TAX AND REVENUE, Respondent Below, Appellee.**

No. 22726.

Supreme Court of Appeals of West Virginia.

Submitted May 10, 1995.

Decided July 11, 1995.

James M. Haviland, Jeffrey G. Blaydes, Crandall, Pyles & Haviland, Charleston, for appellants.

Darrell V. McGraw, Jr., Atty. Gen., Barry L. Koerber, Scott E. Johnson, Asst. Attys. Gen., Charleston, for appellee.

PER CURIAM:

This dispute concerns the civil service classifications of Mary Akers and Charlene Boggs, employees of the West Virginia Department of Tax and Revenue (Tax Department). Both Ms. Akers and Ms. Boggs maintain that their positions should be classi-

fied as Audit Clerk III, a higher classification with more pay than their present classification. After the Circuit Court of Kanawha County upheld the level IV decisions of the West Virginia Education and State Employees Grievance Board (Board) refusing to upgrade the classifications of Ms. Akers and Ms. Boggs to Audit Clerk III, they appealed to this Court.[1] On appeal, Ms. Akers and Ms. Boggs maintain: (1) Because this Court in *American Federation of State, County and Municipal Employees v. Civil Service Com'n of West Virginia*, 181 W.Va. 8, 380 S.E.2d 43 (1989) (*AFSCME IV*) recognized Audit Clerk III as their proper classification, the only remaining issue is the amount of back pay; and (2) In the event the classification issue is not foreclosed, Ms. Akers and Ms. Boggs allege that the record establishes that because they have performed the same work as others with the higher classification, they are entitled to be reclassified and to the resultant back pay. Because Ms. Akers and Ms. Boggs entered a settlement agreement with the Tax Department, neither is entitled to the *AFSCME IV* acknowledgment that "the parties hereto have already been determined to have worked out of classification" (181 W.Va. at 14, 380 S.E.2d at 49), and they have not established that they performed the work of the higher classification, we affirm the decision of the circuit court.

1. Although the Board considered the cases separately, Ms. Akers and Ms. Boggs presented a consolidated appeal to the circuit court from which they now appeal to this Court.

2. Effective December 1, 1985, Ms. Akers was promoted to a Tax Audit Clerk II, which is in a new series established as a result of a Tax Department classification study in the mid–1980s. June Sydenstricker, the Tax Department's Personnel Officer, recommended in a January 28, 1985 memo that Ms. Akers' position be reclassified to a Tax Audit Clerk II. Ms. Sydenstricker also said:

   In the absence of this action taking place within the next fifteen days, I recommend your position be allocated to Audit Clerk III to realign the position to that classification indicating the greater complexity of this series.

3. Effective December 1, 1985, Ms. Boggs was promoted to an Tax Audit Clerk II, which is part of a new position series established as a result of a mid–1980s Tax Department study. Ms. Sydenstricker, the Tax Department's Personnel Officer,

## I

During Ms. Akers' employment with the Tax Department from December 16, 1978 until December 31, 1988, she was, at various times, classified as a Clerk III, Audit Clerk I and Audit Clerk II. In a letter to the West Virginia Civil Service Commission (Civil Service Commission) dated May 5, 1986, Ms. Akers claimed she should be classified as an Audit Clerk III from December 16, 1978 until December 1, 1985.[2] Ms. Akers maintains that because she performed the same work as persons classified as Audit Clerk III, her position should be similarly classified.

During the level IV hearing, Ms. Akers said that she "examined tax returns to determine if the proper amount of tax was paid ... [by] reviewing the file, the taxpayers [sic] files, and auditing the returns." In addition to dealing with the necessary correspondence with taxpayers, accountants, public officials and city employees, Ms. Akers would issue "estimate assessments [sic] liens and distress warrants."

Ms. Boggs, who began working for the Tax Department in October 1976, was classified as an Audit Clerk I from February 1, 1979 to December 1, 1985.[3] In a letter to the Civil Service Commission dated May 5, 1986, Ms. Boggs claimed she should have been classified as an Audit Clerk III from August 1, 1979 until December 1, 1985.[4] Ms. Boggs

recommended in a January 28, 1985 memo that Ms. Boggs' position be reclassified to a Tax Audit Clerk II. Ms. Sydenstricker also said:

   In the absence of this action taking place within the next fifteen days, I recommend your position be allocated to Audit Clerk III to realign the position to that classification indicating the greater complexity of this series.

4. In the petition of *American Federation of State, County and Municipal Employees v. Civil Service Com'n of West Virginia*, No. 17929 (W.Va. May 20, 1988) (*AFSCME III*) (per curiam order), Ms. Boggs' job title was listed as Tax Audit Clerk II and the period for which she claimed back wages was October 16, 1976 to December 1, 1985. At the level IV hearing, Ms. Boggs requested back pay from February 1, 1979 through December 1, 1985.

   During the level IV hearing, the hearing examiner noted that because Ms. Boggs did not contend that she should have been classified as an Audit Clerk II, any claim in that regard was deemed abandoned.

also maintains that because other workers classified as Audit Clerk III in the Tax Department performed the same work as she, she should be reclassified as a Audit Clerk III.

At the level IV hearing, Ms. Boggs testified that as a Corporate Net Income Tax employee, she was "responsible for the internal audit of the return, issue and billing assessments of tax, liens and warrants." She noted that she had to be familiar with various other taxes, tax credits and accounting procedures and for out of state corporations the "allocation of their income and apportioning of income to domicile and ... various factors that's determined by law; payroll, property, [sic] sales." Ms. Boggs computed the tax liability and handled the resultant correspondence and attempts to resolve the tax matter.

The Tax Department maintains that neither Ms. Akers nor Ms. Boggs worked out-of-classification because neither performed the on-site work contained in the Civil Service Commission's job description for an Audit Clerk III. The job description for Audit Clerk III provides, in pertinent part:

> *Nature of Work:* This is responsible work in examining books and records of government units or private businesses subject to state regulations. *Employees of this class are responsible for auditing subsidiary books and records maintained by individuals and private industry in enforcing special tax and regulatory laws.* Work is subject to analysis and review while in progress and upon completion by a supervising auditor, and employees are given general instruction as to methods, procedures and objectives. (Emphasis added.)

Ms. Akers and Ms. Boggs were among the relators in *AFSCME III* ) (a mandamus proceeding directing the Civil Service Commission to submit a plan to implement our decisions in *American Federation of State, County, and Municipal Employees v. Civil Service Com'n of West Virginia,* 174 W.Va. 221, 324 S.E.2d 363 (1984) (*AFSCME I* ) (recognizing work performed out of classification is compensable) and *American Federation of State, County, and Municipal Employees v. Civil Service Com'n of West Virginia,* 176 W.Va. 73, 341 S.E.2d 693 (1985) (*AFSCME II* ) (per curiam) (recognizing full back pay as the remedy for work performed out of classification)).[5] However, neither Ms. Akers nor Ms. Boggs was a petitioner in *AFSCME I* or *AFSCME II;* rather, their claims were not sent to the Civil Service Commission until May 5, 1986, which was after our decisions in *AFSCME I* and *AFSCME II.*

Ms. Akers and Ms. Boggs were among the petitioners in *AFSCME IV,* but before our decision in *AFSCME IV,* which was filed on March 28, 1989, Ms. Akers, Ms. Boggs and other Tax Department employees entered into a settlement agreement to resolve "the amount of back pay owing to the above-mentioned individual petitioners by December 27, 1988." The settlement agreement between AFSCME and the Civil Service Commission was filed in this Court on December 5, 1988 (the settlement agreement) and pertains to eleven *AFSCME IV* petitioners including Ms. Akers and Ms. Boggs. As a result of the settlement agreement, the parties jointly moved this Court to "dismiss the existing Rule to Show Cause as to the Tax Department." The settlement agreement was approved in *AFSCME IV,* 181 W.Va. at 15 n. 22, 380 S.E.2d at 50 n. 22, which states:

> We approve of all settlements previously entered into by AFSCME and state employers as consistent with this opinion.

According to the settlement agreement, the Tax Department and the settling employees, including Ms. Akers and Ms. Boggs, will provide the other with information of their positions "on the period of time of misclassifi-

---

5. *See AFSCME IV,* 181 W.Va. at 9, 380 S.E.2d at 44, for a brief summary of the earlier cases. In *AFSCME I,* we did not find that all the petitioners meet the description of the higher civil service category and said that on remand the status of such petitioners should be re-examined. *AFSCME I,* 174 W.Va. at 223 n. 4, 324 S.E.2d at 365 n. 4. In *AFSCME II,* the petitioners includ- ed the *AFSCME I* petitioners and two additional relators. The status of each petitioner was reviewed (176 W.Va. at 76–77, 341 S.E.2d at 696–97) and we concluded that all the petitioners were entitled to full back pay "for the entire period during which they worked out of classification." *AFSCME II,* 176 W.Va. at 79–80, 341 S.E.2d at 699.

cation and the amount of back pay owing."[6] Finally, the parties agreed that "whose claims not resolved by December 27, 1988" would be subject "to expedited arbitration at level four, West Virginia Code 29A–6A–4(d) for resolution by a hearing examiner," whose jurisdiction would not be objected to by the parties.[7] The settlement agreement also contains provisions for other pending cases, which are called "pipeline cases."[8]

Because Ms. Akers, Ms. Boggs and the Tax Department did not agree by the deadline, December 27, 1988, the matter was considered by a Board's hearing examiner at a level IV hearing.[9] At the level IV hearing, Ms. Akers and Ms. Boggs maintained that they had, in fact, performed the work of the higher classification. The Tax Department alleged that there had been no previous determination that either Ms. Akers or Ms. Boggs had performed the work of an Audit Clerk III.

In both cases, the hearing examiner found that because neither Ms. Akers nor Ms. Boggs had performed the work of an Audit

Clerk III, neither was entitled to back pay. After a consolidated appeal, the circuit court upheld the level IV decisions and both parties appealed to this Court.[10]

## II

The threshold question concerns whether the level IV hearing examiner should have considered the merits of Ms. Akers and Ms. Boggs' contention that they worked out of classification. Ms. Akers and Ms. Boggs allege that *AFSCME IV* foreclosed the consideration of the merits of the out of classification question. The Tax Department alleges that the level IV hearing was the first and only determination of the merits of Ms. Akers and Ms. Boggs' allegation that they worked out of classification.

## A

■ Although Ms. Akers and Ms. Boggs were petitioners in both *AFSCME III* and *AFSCME IV,* neither decision reached a conclusion concerning the merits of whether

6. The settlement agreement states, in pertinent part:

> (1) AFSCME and the Tax Department will attempt to resolve the amount of back pay owing the above-mentioned individual petitioners by December 27, 1988. As part of this process, the Tax Department will immediately provide AFSCME and the individual petitioners sufficient information concerning the department's position on the period of time of misclassification and the amount of back pay owing. AFSCME will likewise immediately provide the department with their position on the period of time of misclassification and the amount of back pay owing.

7. The settlement agreement states, in pertinent part:

> (3) As to those individuals referred to in ¶s 1 and 2 above, whose claims are not resolved by December 27, 1988, the settling parties agree that the above specified procedures shall be deemed compliance with the first three steps of the arbitration procedure as set forth in W.Va. Code § 29A–6A–4 and the settling parties agree to submit the matter to expedited arbitration at level four, West Virginia Code 29A–6A–4(d) for resolution by a hearing examiner. The parties agree that they will not assert any objections to the jurisdiction of the hearing examiner to consider this matter and that this agreement will become part of the record at level four.

8. Paragraph 3 of the settlement agreement provided for an information exchange for "the 'pipeline' cases for employees of the Tax Department" (*see supra* note 6, for the information to be exchanged) and to "provide each other with information sufficient for an evaluation on the merits of the back pay owed for each of these ['pipeline'] claims or potential claims and the period of misclassification."

9. According to the Tax Department's brief, except for Ms. Akers, Ms. Boggs and one other employee, all of the Tax Department's employees who were *AFSCME IV* petitioners, settled without the necessity of a level IV hearing. Although Ms. Akers and Ms. Boggs argue that the Tax Department's offer indicates that the Tax Department agrees that they were entitled to back pay, the mere offer to settle does not necessarily acknowledge the validity of a claim. *See* Rule 408 [1985] of the *W.Va.R.Evid.; Schartiger v. Land Use Corp.,* 187 W.Va. 612, 616–17, 420 S.E.2d 883, 887–88 (1991).

10. Because of our decision in *W.Va. Department of Health & Human Resources v. Hess,* 189 W.Va. 357, 432 S.E.2d 27 (1993) (appeal to circuit court of an administrative decision must be filed within thirty "working," rather than, "calendar" days), the case was remanded to the circuit court, which had previously dismissed Ms. Akers' and Ms. Boggs' appeal of their level IV decisions for failing to file within thirty calendar days.

these two employees worked out of classification. In *AFSCME III*, we granted relief because the Civil Service Commission "failed to resolve promptly the job classification problems of the petitioners." Slip op. at 5. We also indicated that the merits of the petitioners' out of classification work contention were not clear, by stating:

> If each of the petitioners in this case worked in a job classification higher than the one to which each was assigned, each is entitled to back pay for the entire pay period which each worked in the higher job classification.

*AFSCME III, supra* note 4, slip op. at 4.

*AFSCME IV* primarily discussed the employees of the Department of Human Resources who were petitioners in the "cases traceable to the early 1980s," namely, the petitioners in *AFSCME I* and *AFSCME II*. 181 W.Va. at 9, 380 S.E.2d at 44. Thus our conclusion that "[o]ur review of the record reveals that the parties hereto have already been determined to have worked out of classification" (181 W.Va. at 14, 380 S.E.2d at 49) refers to these original *AFSCME I* and *AFSCME II* petitioners. We recognized that AFSCME also represented employees, whose back pay claims were filed after our decision in *AFSCME I*.

> In addition to the parties hereto, AFSCME represents other employees who filed back pay claims subsequent to our decision in *AFSCME v. Civil Serv. Comm'n,* 174 W.Va. 221, 324 S.E.2d 363 (1984) (*AFSCME I*). These cases have not been finally determined.

*AFSCME IV,* 181 W.Va. at 9 n. 1, 380 S.E.2d at 44 n. 1. Our conclusion that the merits of out of classification work had been determined, did not apply to the claims filed after our *AFSCME I* and *AFSCME II* decisions. In this case, Ms. Akers and Ms. Boggs were not petitioners in either *AFSCME I* or

*AFSCME II* and no determination had been made concerning the merits of their out of classification claims. Therefore, the claims of Ms. Akers and Ms. Boggs involved more that the "issue of back pay." *AFSCME IV,* 181 W.Va. at 14, 380 S.E.2d at 49.

We also note that Ms. Akers and Ms. Boggs settled with the Tax Department before the *AFSCME IV* decision and therefore, were not parties to the decision.[11] Because of their settlement, the claims of Ms. Akers and Ms. Boggs were dismissed. *AFSCME IV,* 181 W.Va. at 14–15, 380 S.E.2d at 49–50. Therefore, we reject the attempt by Ms. Akers and Ms. Boggs to have the *AFSCME IV* conclusion that "the parties hereto have already been determined to have worked out of classification" apply to them.

B

The settlement agreement between the parties allows the Board's level IV hearing examiner to resolve any claims not settled by December 27, 1988. This Court has long held that a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed. The rule is set forth in Syllabus pt. 1, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962), which states:

> A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.

*See* Syllabus pt. 2, *Orteza v. Monongalia County General Hospital,* 173 W.Va. 461, 318 S.E.2d 40 (1984) ("[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed").

The settlement agreement between the Tax Department and its employees including

---

11. Ms. Akers and Ms. Boggs argue that because we approved the "settlements previously entered into by AFSCME and the state employers as consistent with this opinion" (*AFSCME IV,* 181 W.Va. at 15 n. 22, 380 S.E.2d at 50 n. 22), they are entitled to no less than the non-settling petitioners. However unlike the Department of Human Resources' employees, the merits of whose claims had been addressed in *AFSCME I* and

*AFSCME II,* the claims of Ms. Akers and Ms. Boggs had not been examined on their merits. Although Ms. Akers and Ms. Boggs are entitled to the extensive procedural relief outlined in the *AFSCME* cases, the record does not justify any conclusion concerning the merits of their claims. Ms. Akers and Ms. Boggs cannot piggyback their claim onto the *AFSCME IV* claims, whose merits had been extensively addressed.

Ms. Akers and Ms. Boggs, attempted "to resolve the back pay owing" through an exchange of information on their respective positions "on the period of time of misclassification and the amount of back pay owing." *See supra* note 6, for the complete text of the settlement agreement's first paragraph. For claims unresolved by December 27, 1988, "the settling parties agree[d] to submit the matter to expedited arbitration at level four" and to forbear from "assert[ing] any objections to the jurisdiction of the hearing examiner to consider this matter." *See supra* note 7, for the complete text of the settlement agreement's third paragraph.

In this case, the parties agree that they did not reach a mutually agreeable resolution by the December 27, 1988 deadline and that the matter was submitted to a level IV hearing. The level IV hearing examiner concluded that because there was no "period of time of misclassification," no back pay was owed. Although Ms. Akers and Ms. Boggs maintain that the settlement agreement recognized that they were owed back pay, by its plain and unambiguous terms, the settlement agreement allows the level IV hearing examiner to determine the "period of time of misclassification and the amount of back pay owing." The settlement agreement does not preclude the hearing examiner from determining that there was no period of misclassification and no back pay owing. Given the terms of the settlement agreement, we find that the hearing examiner properly considered the "period of time of misclassification and the amount of back pay owing."

### III

■ During the level IV hearing, the primary evidence of misclassification presented by Ms. Akers and Ms. Boggs was that they performed the same work as other Tax Department employees classified as Audit Clerk III. Ms. Akers and Ms. Boggs concede that they did not do the work described in the written job description of Audit Clerk III. *See supra* p. 705, for the Audit Clerk III's written job description. The Tax Department maintains that neither presented any evidence that she examined "books and records of government units or private businesses" or audited "subsidiary books and records maintained by individuals or private industry," as specified in the Audit Clerk III's written job description.

Rather Ms. Akers and Ms. Boggs maintain that because others enjoyed a higher classification and performed the same work that they performed, they should be similarly misclassified. Both note that our *AFSCME* cases stand for the proposition of "equal pay for equal work,' as set forth in W.Va.Code, 29–6–10(2)." (Footnote omitted.) *AFSCME IV*, 181 W.Va. at 10, 380 S.E.2d at 45. However, when this principle was applied, we have considered the actual duties performed. Thus in *AFSCME I*, because the "petitioners had been performing the duties of an Economic Service Worker III," (*AFSCME I*, 174 W.Va. at 222, 324 S.E.2d at 365), we found the *AFSCME I* petitioners were entitled to a higher classification. *AFSCME I*, 174 W.Va. at 224–25, 324 S.E.2d at 367.

The hearing examiner considered the written job descriptions for Audit Clerk I, II and III and concluded that Audit Clerk I and II were basically "tax review positions" and that an Audit Clerk III involves "review of other, more detailed records generally maintained on the premises of the subject 'government unit or private business.'"[12] The hearing examiner noted that June Sydenstricker, the Tax Department's Personnel Officer, explained that the Audit Clerk III classification had been used to promote deserving senior staff members without regard to work performed. Ms. Akers and Ms. Boggs argue that because they perform the same work as

---

**12.** The job description for Audit Clerk I provides:

Under close supervision, an employee in this class receives and audits accounts and/or reports for completeness and accuracy. Assignments are reviewed by an administrative superior upon completion for conformity with departmental rules and policies.

The job description for Audit Clerk II provides:

Under general supervision, ... performs advanced level sub-professional auditing work in checking reports for completeness and accuracy. Evaluates the compliance of data with prescribed laws, rules or regulations. Employee may also supervise lower level audit clerks and other clerical personnel.

*See supra* p. 705 for the job description for Audit Clerk III.

the misclassified Audit Clerk III employees, they should be similarity misclassified. In rejecting this argument, the hearing examiner noted that many positions are misclassified and to legitimize such actions would "serve to undermine the basis of the classification plan and the principle of personnel and pay administration on which it is founded."

The level IV hearing examiner concluded that because neither Ms. Akers nor Ms. Boggs had performed the duties of an Audit Clerk III, neither was entitled to the higher classification. The circuit court, in a consolidated appeal, affirmed the decisions of the hearing examiner and also found that *AFSCME IV* did not preclude the hearing examiner from considering whether Ms. Akers or Ms. Boggs had performed the work of a higher classification.

█ Syllabus pt. 1, *Randolph County Bd. of Educ. v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989) states:

A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va. Code, 18-29-1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.

*See* Syllabus, *Billings v. Civil Service Com'n,* 154 W.Va. 688, 178 S.E.2d 801 (1971) (findings of the Civil Service Commission will not be reversed "unless it is clearly wrong"); Syllabus pt. 3, *Pockl v. Ohio County Bd. of Educ.,* 185 W.Va. 256, 406 S.E.2d 687 (1991).

In this case, the record shows that neither Ms. Akers nor Ms. Boggs performed the work of an Audit Clerk III. Neither reviewed the more detailed records generally maintained on the premises of government units or private businesses. Neither audited subsidiary books or records maintained by individual or private industry. Although the record shows that others were misclassified into the Audit Clerk III position, no justification was provided to continue this misclassification.

Syl. pt. 1, *Dillon v. Bd. of Educ. of County of Mingo,* 171 W.Va. 631, 301 S.E.2d 588 (1983), states:

"Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syllabus Point 4, *Security National Bank & Trust Co. v. First W.Va. Bancorp., Inc.,* [166] W.Va. [775], 277 S.E.2d 613 (1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 [(1982)].

*See* Syllabus pt. 2, *Hardy County Bd. of Educ. v. W.Va. Division of Labor,* 191 W.Va. 251, 445 S.E.2d 192 (1994); *W.Va. Nonintoxicating Beer Com'r v. A & H Tavern,* 181 W.Va. 364, 382 S.E.2d 558 (1989); *State by Davis v. Hix,* 141 W.Va. 385, 389, 90 S.E.2d 357, 359–60 (1955) ("[w]here the language of the statute is of doubtful meaning or ambiguous, rules of construction may be resorted to and the construction of such statute by the person charged with the duty of executing the same is accorded great weight").

In this case, the parties agreed that neither Ms. Akers nor Ms. Boggs performed the work as described in the Audit Clerk III classification. The Tax Department presented evidence that the Audit Clerk III position described an employee who reviews detailed records generally maintained outside the Department by a governmental unit or private business or was involved with enforcing a special tax or regulatory law. The Tax Department alleged that except for the position of Field Agent, no one in the Department performed the detailed review. Although some Tax Department employees' positions were misclassified as Audit Clerk III, no justification for continuing the misclassification was presented. Indeed, the Tax Department's mid–1980s study and reclassification project should have eliminated the misclassifications.

For the above stated reasons, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and FOX, Judge, sitting by temporary assignment.