406 S.E.2d 696

**H. Glen YOHO, Plaintiff Below, Appellee,**

v.

**BORG–WARNER CHEMICALS, A Corporation, Defendant Below, Appellant.**

**No. 19757.**

Supreme Court of Appeals of West Virginia.

Submitted May 15, 1991.

Decided June 27, 1991.

William L. Jacobs, George R. Chandler, Parkersburg, for appellee.

David D. Johnson, Gene W. Bailey, II, Charleston, for appellant.

PER CURIAM:

Appellant Borg–Warner Chemicals ("Borg–Warner") appeals from an order of the Circuit Court of Wood County denying its motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial. Appellee H. Glen Yoho initiated the underlying civil action to enforce the terms of a settlement agreement which the parties executed as a method of resolving an employment dispute that resulted in Mr. Yoho's resignation. A dispute arose regarding interpretation of a provision in the agreement whereby Borg–Warner agreed to "solicit" potential employers on Mr. Yoho's behalf. The primary issue raised on appeal is whether the trial court erred in refusing to admit extrinsic evi-

dence concerning the meaning of the term "solicit." Having reviewed the applicable law and the facts of this case, we find no reversible error and accordingly affirm the decision of the circuit court.

On January 14, 1981, Mr. Yoho and Borg–Warner entered into a settlement agreement in connection with appellee's resignation from his employment as a chemical operator at Borg–Warner.[1] Paragraph 2(B) of the referenced settlement agreement provided that Borg–Warner will "[u]ndertake in good faith to solicit employment for [Mr. Yoho] (but does not guarantee its ability to obtain employment for him) at a salary comparable to the employment he had before he resigned." In addition to its agreement to "solicit" employment for Mr. Yoho, Borg–Warner agreed to pay appellee the sum of $40,000. The only portion of the settlement agreement that gives rise to this dispute is the provision pertaining to Borg–Warner's agreement to "solicit" employment for Mr. Yoho.

Based on Mr. Yoho's position that Borg–Warner had breached its agreement to "solicit" employment for him, appellee initiated a civil action to enforce his interpretation of the settlement agreement. Following a trial before the circuit court which began on August 28, 1989, the jury returned a verdict in favor of Mr. Yoho and awarded him damages in the amount of $107,000. This appeal arises from the circuit court's denial of Borg–Warner's motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial.

Pursuant to a pretrial order, Borg–Warner was precluded from presenting extrinsic evidence at trial regarding the understanding and agreement of the parties concerning the terms of the settlement agreement. Based on its contention that the meaning of the term "solicit" is ambiguous, Borg–Warner objected to being precluded from offering the testimony of its counsel who was present at the drafting of the agreement. Appellant maintains that the trial court erred by refusing to admit Borg–Warner's extrinsic evidence regarding the understanding and agreement of the parties contemporaneous with and subsequent to the execution of the settlement agreement.[2]

West Virginia law regarding application of the parol evidence rule is well-settled. "[W]here the terms of a written instrument are unambiguous, clear and explicit, extrinsic evidence of statements of any of the parties to it made contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain its terms, in the absence of fraud, accident or mistake in its procurement." *Kanawha Banking & Trust Co. v. Gilbert*, 131 W.Va. 88, 101, 46 S.E.2d 225, 232–33 (1947); *see also id.* at Syl.Pts. 1, 2, and 3. Conversely, the law does provide that parol evidence may be used to explain uncertain, incomplete, or ambiguous contract terms. *See Glenmark Associates, Inc. v. Americare*, 179 W.Va. 632, 371 S.E.2d 353 (1988); *Holiday Plaza, Inc. v. First Fed. Sav. & Loan Ass'n*, 168 W.Va. 356, 285 S.E.2d 131 (1981); *Berkeley County Pub. Serv. Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968). The issue thus presented is whether the term "solicit" in the subject settlement agreement is ambiguous, thereby permitting the introduction of extrinsic evidence to explain " 'the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently.' " *Buckhannon Sales Co., Inc. v. Appalantic Corp.*, 175 W.Va. 742, 338 S.E.2d 222, 224 (1985) (quoting

---

1. Appellee had been employed as an operator at the Woodmar, West Virginia, facility of Borg–Warner from 1966 until his resignation in October 1987.

2. By way of an offer of proof, Borg–Warner did present the testimony of its counsel concerning his understanding of the meaning of the term "solicit" relating to its inclusion in the settlement agreement. The import of this testimony was Borg–Warner's position that Mr. Yoho had an affirmative duty to provide appellant with the names of prospective employers before it had any concomitant obligation to transmit letters of recommendation to any such potential employers.

Syl.Pt. 4, *Watson v. Buckhannon River Coal Co.*, 95 W.Va. 164, 120 S.E. 390 (1923)); *accord Leasetronics, Inc. v. Charleston Area Medical Center, Inc.*, 165 W.Va. 773, 271 S.E.2d 608 (1980).

The facts surrounding the execution of the settlement agreement are not in dispute. On January 14, 1981, Mr. Yoho's civil action which alleged that he was forced to resign from Borg–Warner was scheduled to go to trial before the United States District Court for the Northern District of West Virginia. Prior to commencement of trial and in response to the court's encouragement, Borg–Warner and Mr. Yoho engaged in settlement negotiations which resulted in the execution of the agreement which is at issue in this case.

The settlement agreement was comprised of two components: (1) a cash sum of $40,000 to be tendered to Mr. Yoho by Borg–Warner and (2) Borg–Warner's agreement to "undertake in good faith to solicit employment" for Mr. Yoho. Both parties recall that due to their joint uncertainty concerning the meaning of the term "solicit," they consulted Black's Law Dictionary to ascertain the term's definition. To "solicit" means:

> [t]o appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petiton to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication.... To awake or excite to action, or to invite. The term implies personal petition and importunity addressed to a particular individual to do some particular thing.

Black's Law Dictionary 1248–49 (5th ed. 1979) (citation omitted).

The parties concur regarding what efforts Borg–Warner undertook in connection with its agreement to "solicit" prospective employment for Mr. Yoho. Initially, Borg–Warner supplied Mr. Yoho with a general letter of reference prepared for appellee's personal use pursuant to the terms of the settlement agreement. The letter was a cursory, two-paragraph statement which indicated that Mr. Yoho had a "good work record" during his twelve years as a chemical operator and that his resignation resulted from a "dispute with [Mr. Yoho's] supervisor." Thereafter, Borg–Warner's efforts to "solicit" employment for Mr. Yoho were limited to sending letters of recommendation to three prospective employers identified by appellee. Those three letters, which were each mailed on February 27, 1981, informed the prospective employer that Mr. Yoho "had a good work record" and "that his work performance would be very acceptable." The letters further noted, "[w]e trust that when you are in a hiring position that you may give favorable consideration to Mr. Yoho's application." Borg–Warner testified that it also responded favorably to a request for information from the Parkersburg, West Virginia, E.I. du Pont de Nemours Company plant concerning appellee's employment at its plant.

On three different occasions—June 1, 1981, April 25, 1983, and May 14, 1984—Mr. Yoho's counsel sent correspondence to Borg–Warner politely inquiring as to what efforts appellant had made "to fulfill its promise with respect to assisting Mr. Yoho in obtaining work." Each request for information went unanswered by Borg–Warner.

The appellee introduced a letter dated February 7, 1981, from Borg–Warner to appellee's counsel as support for his contention that Borg–Warner understood that it was required to unilaterally undertake to obtain employment for Mr. Yoho pursuant to the settlement agreement. The following are excerpts from that letter:

1. Upon the execution of the General Release which was forwarded to you and the cashing of the $40,000.00 check my client will send a letter undertaking to obtain employment for Herbert Glen Yoho and a copy of each letter to the various personnel departments will be forwarded to you.

2. If it develops that no employment is available because of the economic condition which prevails at this time another

letter will be send [sic] and if you have some particular employment in mind a letter will be forwarded.

3. The agreement signed in Clarksburg is in our possession as well as yours and we propose to undertake to obtain employment for Yoho in accordance with that agreement.

The excerpted paragraphs demonstrate that the jury was provided with convincing evidence regarding the fact that Borg–Warner viewed its obligation "to undertake to obtain employment for Mr. Yoho" as requiring it to independently initiate a certain course of action. Paragraph one memorializes that Borg–Warner understood that the action required by the settlement agreement was for it to send letters to various personnel departments of other companies in an effort to seek employment for Mr. Yoho. Paragraph two of this same letter further clarifies that Mr. Yoho was free to suggest or identify any additional companies to which he wished Borg–Warner to transmit similar letters seeking employment on his behalf. The inclusion of this separate provision in the letter which grants Mr. Yoho the option of identifying additional prospective employers helped establish that Borg–Warner understood that its obligation to seek employment for appellee was not dependent on a list of prospective employers being supplied by Mr. Yoho.

We concur with the reasoning employed by the circuit court below when it ruled that extrinsic evidence to explain the meaning of "solicit" was inadmissible:

'Solicit' is not an ambiguous term. The jury may be instructed on the definition of the term and it may be argued by counsel.

If defendant be unsure as to how it should proceed in order to sufficiently fulfill its obligation sufficiently [sic], that is because it did not adequately consider the appropriate terms for its settlement agreement before signing it.

Such uncertainty on its part is not grounds for allowing defendant to change or alter the terms of the agreement. To change the clear intent of the contract, which obligates defendant to take affirmative action, as the term 'solicit' implies, so as to require the plaintiff to take affirmative action as a prerequisite is to add additional terms to the agreement which the parties did not stipulate.

Defendant's remedy is to prove what it actually did pursuant to the language of the agreement and attempt to convince the jury that it fulfilled its obligation.

Defendant may *not* introduce parol evidence of any contemporaneous agreement varying the terms of its written agreement. *Kanawha Banking & Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947).

▮ The parol evidence rule, as stated by this Court in *Warner v. Haught, Inc.*, 174 W.Va. 722, 329 S.E.2d 88 (1985), requires that " '[a] written contract merges all negotiations and representations which occurred before its execution, and in the absence of fraud, mistake, or material misrepresentations extrinsic evidence cannot be used to alter or interpret language in a written contract which is otherwise plain and unambiguous on its face.' " *Id.* at Syl.Pt. 1 (quoting Syl.Pt. 3, *Iafolla v. Douglas Pocahontas Coal Corp.*, 162 W.Va. 489, 250 S.E.2d 128 (1978)). Given the unambiguous nature of the term "solicit" and the agreement of the parties to its definition at the time of the term's inclusion in the settlement agreement, the circuit court properly applied the parol evidence rule to prohibit admission of any extrinsic evidence regarding the term's meaning.

Finding no merit to the other assigned errors, we hereby affirm the holding of the Circuit Court of Wood County based on the foregoing.

Affirmed.