450 S.E.2d 784

**Earl R. SCYOC, Plaintiff
Below, Appellee**

v.

**Michael HOLMES and Lawrence W.
Burdette, Defendants Below.**

**Lawrence W. Burdette, Appellant.**

No. 22045.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 27, 1994.

Decided Oct. 28, 1994.

88

Charles E. Hurt, Hurt & Barone, Charleston, for appellee.

Lawrence W. Burdette, Jr., pro se.

PER CURIAM:

Lawrence W. Burdette, Jr. appeals the decision of the Circuit Court of Kanawha County finding that he guaranteed payment to Earl R. Scyoc of the rent and utilities moneys due Mr. Scyoc from Michael Holmes in the amount of $5,953.21. On appeal Mr. Burdette maintains that he was not a guarantor of Mr. Holmes' debt and that he received no consideration from Mr. Scyoc. Because the record shows that Mr. Burdette's July 22, 1988 letter promised Mr. Scyoc his money, we affirm the decision of the circuit court.

On June 8, 1987, Mr. Scyoc leased property to Mr. Holmes for a monthly rental of $225, plus utilities. Because Mr. Holmes was not paying his rent and utilities, Mr. Scyoc wrote to Mr. Burdette, who was Mr. Holmes' lawyer in an unrelated personal injury suit, about a previous conversation between Mr. Scyoc and Mr. Burdette. According to Mr. Scyoc's July 12, 1988 letter, he understood "that if I [Mr. Scyoc] allowed Mr. Holmes to continue to live at the above address, you [Mr. Burdette] would see that I was paid for all accumulated rents and utilities as soon as a settlement was reached." In a letter dated July 22, 1988 to Mr. Scyoc, Mr. Burdette wrote, "I would like to confirm to you that if there is a favorable settlement or a verdict herein, I will protect your monies for you for this rent." As of July 22, 1988, Mr. Holmes owed Mr. Scyoc $2,008.17 for back rent and utilities. Mr. Scyoc allowed Mr. Holmes to continue living on his property and the rent and utilities continued to accumulate.

In a letter dated June 8, 1989 to Mr. Scyoc, Mr. Burdette wrote, "I had previously advised you that we would protect any amount of reasonable monies that he [Mr. Holmes] owes you from any settlement or verdict we might get in his law suit [sic] and I want to reassure you of that." In that same letter, Mr. Burdette notified Mr. Scyoc that Mr. Holmes was moving and asked Mr. Scyoc "to forward me an itemized list of all monies owed by Mike [Holmes] to you." Thereafter, Mr. Holmes, who was represented by Mr. Burdette, was awarded $165,000 in his personal injury suit. Mr. Scyoc claimed that Mr. Holmes owed him $5,369.30 plus $806 interest for rent and utilities. According to Mr. Burdette, Mr. Holmes objected to this amount and claimed he only owed Mr. Scyoc $3,000.[1] After Mr. Scyoc filed suit, Mr. Burdette deposited the $3,000 with the clerk of the circuit court.[2]

Alleging that Mr. Holmes had failed to pay rent and utilities, Mr. Scyoc filed suit against Mr. Holmes and Mr. Burdette. On October

---

1. According to Mr. Burdette's affidavit, Mr. Scyoc was offered "$3,000 in fair settlement of this claim but has refused" the settlement.

2. Mr. Burdette was also required to deposit an addition $225 for interest, because although ordered to deposit the $3,000 by an order dated August 3, 1990, the money was not deposited until April 1991.

1, 1991 Mr. Scyoc was awarded judgment of $5,953.11 plus interest and costs against Mr. Holmes. The circuit court reserved judgment against Mr. Burdette pending payment by Mr. Holmes. After Mr. Holmes was found to be judgment proof[3], the circuit court, by order dated January 19, 1993, entered judgment against Mr. Burdette based on his letter of July 22, 1988, which the circuit court found "constitutes a promise on behalf of the defendant, Lawrence W. Burdette, to guarantee the debt of defendant, Michael Holmes."

## I

■ On appeal Mr. Burdette maintains that his July 22, 1988 letter was not supported by adequate consideration. We have long held that "the promise of one person to pay the debt of another, though in writing, must be founded on a consideration to make it binding. . . ." Syl. pt. 1, *Winkler v. Chesapeake & Ohio R.R. Co.*, 12 W.Va. 699 (1878). Consideration is shown when the person promising to pay the debt is "benefited by the payment of said debt." *Winkler*, 12 W.Va. at 706. *Winkler* quoted the early case of *Parker v. Carter*, 18 Va. (4 Munf.) 273 (1814), which held that "a promise in writing not under seal, by a son to pay a debt for his father, must be considered *nudum pactum*, unless some consideration money from the creditor to the son, or some agreement binding the creditor to forbear or the like, in the event of the assumption by the son be proved." *Winkler*, 12 W.Va. at 706–7.

In this case, Mr. Burdette, a lawyer whose business is to secure benefits for clients, undertook to secure a benefit for Mr. Holmes, his client. By helping his client, Mr. Burdette secured at least two benefits for his own business. The benefit for Mr. Burdette's client included Mr. Scyoc's forbearance in allowing the client to continue to live on the rental property without any act to collect the arrearage. By securing his client

these benefits, Mr. Burdette benefited his business because the client continued to retain Mr. Burdette to represent him—indeed Mr. Burdette had forestalled legal action on the debt owed, and Mr. Burdette's business reputation was positively enhanced, which would in turn attract more clients.

Because of the benefits to Mr. Burdette and Mr. Scyoc's forbearance, we find adequate consideration to support any alleged promise in Mr. Burdette's July 22, 1988 letter and reject Mr. Burdette's first assignment of error.

## II

■ Mr. Burdette next argues that his July 22, 1988 letter was not a guaranty that he would pay Mr. Holmes' debt. Mr. Burdette notes that his July 22, 1988 letter does not use the words "guarantee" or "guarantor" and argues that at worst his letter is ambiguous. We have long held that a "contract of guaranty must be construed by the terms of the guaranty and the circumstances under which it was made." *Midland Investment Co. v. Nelson*, 107 W.Va. 220, 225–26, 148 S.E. 9, 11 (1929). The parties' intentions apply and the mere presence of technical terms such as "guarantee" or "guarantor" is not a *sine qua non*.

■ A valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed. This long-standing rule is set forth in Syl. pt. 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), which states:

A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.

See Syl. pt. 2, *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d

---

3. According to Mr. Scyoc's brief, Mr. Holmes has no assets, automobiles or bank accounts subject to levy because he had transferred all his assets into his wife's name. Although Mr. Burdette argues that collection should be first sought from Mr. Holmes, Mr. Burdette did not request a transcript of the circuit court's hearing concern-

ing the entry of judgment against him. Because of the delay in entering judgment against Mr. Burdette—about 15 months after judgment was entered against Mr. Holmes—and the silent record, we find no evidence that collection from Mr. Holmes was not attempted.

40 (1984) ("[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed").

 In this case, Mr. Burdette's letter first referred to Mr. Scyoc's letter of July 12, 1988 and then said, "I would like to confirm to you that if there is a favorable settlement or verdict herein *I will protect your monies for you for this rent.*" In a letter dated June 8, 1989 to Mr. Scyoc, Mr. Burdette wrote, "I had previously advised you that we would protect any amount of reasonable monies he owes you from any settlement or verdict we might get in his law suit [sic] and I want to reassure you of that." In the June 8, 1989 letter, Mr. Burdette also notified Mr. Scyoc of Mr. Holmes' move and requested an itemized bill.

"The finding of a trial court upon facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such findings." *Daugherty v. Ellis,* Point 6 Syllabus, 142 W.Va. 340, 97 S.E.2d 33 (1956).

Syllabus Point 6, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962).

In this case, the circuit court found Mr. Burdette's July 22, 1988 letter "guarantee[d] unto the plaintiff rentals owned the plaintiff by defendant, Michael Holmes, contingent only upon a favorable settlement of his then pending law suit [sic]." Given the plain and unambiguous language of the letter, we find that the circuit court's holding was correct and should not be disturbed.

### III

 Finally, Mr. Burdette argues that even if his July 22, 1988 letter is considered a guarantee, the only rentals guaranteed by his letter are those due on the letter's date or $2,008.17. However, Mr. Burdette's July 22, 1988 letter referred to Mr. Scyoc's July 12, 1988 letter, which discussed the rent due and future rent for allowing Mr. Holmes "to continue to live" on the property. Mr. Scyoc closed his letter with a reminder that the current amount was $2008.17 and that "this [amount] would continue to increase each month." Indeed, Mr. Burdette's June 8, 1989 letter also indicates that Mr. Burdette intended to "protect any amount of reasonable monies he [Mr. Holmes] owes you [Mr. Scyoc]."

Because on July 22, 1988 Mr. Burdette intended to protect Mr. Scyoc for the $2,008.17 then due and Mr. Holmes' future rent until the lawsuit was favorably concluded, we reject this argument.

For the above stated reasons, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.