490 S.E.2d 817

**William TOPPINGS, Plaintiff Below, Appellee,**

v.

**RAINBOW HOMES, INC., Defendant Below, Appellant.**

No. 23883.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1997.

Decided July 16, 1997.

David L. Hill, Hurricane, for Appellee.

Elliot G. Hicks, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellant.

PER CURIAM:

Rainbow Homes, Inc. appeals a jury verdict in the Circuit Court of Lincoln County awarding William Toppings $10,300 based on an oral contract for the sale of a mobile home. On appeal, Rainbow Homes, Inc.

("Rainbow") alleges several assignments of error including the circuit court's failure to direct a verdict based on the failure to fulfill the signature requirement of the Uniform Commercial Code (U.C.C.) Statute of Frauds, *W.Va.Code*, 46–2–201 [1963]. Because we agree that the signature requirement of *W.Va.Code*, 46–2–201 [1963] was not met in this case, we reverse the decision of the circuit court.

## I.

### *Facts and Background*

On May 5, 1993, Mr. Toppings and his wife went to Rainbow's mobile home lot in Ashland, Kentucky where David Cantwell, a salesperson for Rainbow, began working with Mr. Toppings. The parties present two different perceptions of their dealings including the May 5, 1993 meeting.

Mr. Toppings maintains that he began the contact with Rainbow by inquiring whether Rainbow took mobile homes as trade-ins. With the assurance that Rainbow accepted trade-ins, Mr. Toppings maintains that after Mr. Cantwell saw the pictures of his current mobile home, he and Mr. Cantwell negotiated an agreement which was reduced to writing by Mr. Cantwell on Rainbow's "A Plain Language Purchase Agreement" ("document").[1]

The document is a pre-printed form on which the following information was completed by Mr. Cantwell: (1) general information including: date, buyer's name, address, telephone number, name of salesperson; (2) information about the mobile home to be purchased including: make, model, year, size, unit price of $33,900, sales tax of $612 and documentation fee of $25; (3) information about the mobile home to be traded in including: make, model, year, size, debt information, "Trade-in allowance $ 13500.[sic]," and "Trade Down Pymt. 13,500 [sic]"; and, (4) "Unpaid Balance of Cash Sale Price 21037.00[sic]." The following information was not completed on the document: (1) insurance; (2) optional equipment, labor and accessories; (3) worksheet for credit agreement; and (4) except for the printed signature of Rainbow, the signature lines at the very bottom.[2]

Mr. Toppings said he was asked during the May 5, 1993 meeting to speak only to Mr. Cantwell concerning this sale to assure Mr. Cantwell of his sales commission. After discussing payments for the home, Mr. Toppings indicated that he wanted to try to

---

1. Mr. Toppings gave the following testimony on cross-examination:

   Q (Elliot G. Hicks, Esq., counsel for Rainbow) And did he [Mr. Cantwell] tell you that he was going to give you Thirteen Thousand Five Hundred Dollars ($13,500.00) for your trailer without having seen your trailer?

   A (Mr. Toppings) He [Mr. Cantwell] saw the pictures. My wife had all the pictures and stuff there, and she showed him the pictures right there. And when he went back to the office, he beat us back, he took it on his own to write up this contract [document].

2. The following is a replica of the signature section at the bottom of the document:

---

You and I certify that the additional terms and conditions printed on the other side of this contract are agreed to as a part of this agreement, the same as if printed above the signatures. I am of statutory age or have been legally emancipated. I am purchasing the above described trailer, manufactured home or vehicle; the optional equipment and accessories, the insurance as described has been voluntary; that my trade-in is free from all claims whatsoever, except as noted. You and I agree that if any paragraph or provision violates the law and is unenforceable, the rest of the contract will be valid.

I, OR WE, ACKNOWLEDGE RECEIPT OF A COPY OF THIS
ORDER AND THAT I, OR WE, HAVE READ AND
UNDERSTAND THE BACK OF THIS AGREEMENT

RAINBOW HOMES, INC.   DEALER          SIGNED X _____

_____BUYER

Not Valid Unless Signed and Accepted by an Officer of the Company

                                      SOCIAL SECURITY NO. _____
                                      SIGNED

_____BUYER

By _____          SOCIAL SECURITY NO. _____

   Approved Subject to acceptance of financing by bank or finance company

arrange financing at a rate lower than the 10.25 percent offered by Rainbow. Mr. Toppings left Rainbow's lot with a copy of the document.

According to Rainbow, Mr. Toppings did not "reveal that he intended to trade, as opposed to purchasing for cash" until after a price was quoted. On the trade-in, Mr. Cantwell said that "he would have to see the [trade-in] home first, but if the condition of the home was as pictured, the trade value could be favorable." In order to assist Mr. Toppings in securing financing from someone other than Rainbow, Mr. Cantwell "offered some bare figures on a sheet which was intended to be a preliminary sales form." The signature section of document stated in fine print under Rainbow's printed name that it was "Not Valid Unless Signed and Accepted by an Officer of the Company." *See* note 2 for signature section of the document. Rainbow maintains that the signature lines of the document were blank and that the document also failed to itemize delivery and set-up fees, costs of optional equipment that had been discussed by Mr. Toppings and Mr. Cantwell and "any number of additional things which would have to be settled before an actual purchase could occur. The figures on the sheet were incomplete, [sic] and entirely contingent on the conditions of the trade-in home." [3]

According to Mr. Toppings, he called Rainbow several times after May 5, 1993, but was unable to reach Mr. Cantwell until June 20, 1993, when arrangements were made for viewing Mr. Toppings' trade-in mobile home in Lincoln County. On June 21, 1993, Mr. Cantwell and Allen Bailey, Mr. Cantwell's supervisor, viewed Mr. Toppings' home. According to Mr. Toppings, after viewing Mr. Toppings' home, Mr. Cantwell, affirmed the document and told Mr. Toppings to return to Rainbow's lot to complete financial arrangements in the next few days.

According to Rainbow, the inspection showed that Mr. Toppings' trade-in was not as previously represented, and Mr. Toppings was told that "there was no way the sale could be made on terms near those suggested on" the document. Rainbow said no resolution was reached on June 21, 1993, and none was reached when Mr. Toppings returned to Rainbow's lot the next day.

On June 22, 1993 when Mr. Toppings went to Rainbow's lot, he said he was told that an additional four thousand dollars ($4,000) would be needed to complete the transaction. According to Mr. Toppings, Mr. Cantwell's explanation of the altered contract was "Now you see it, and now you don't."

After the parties failed to resolve the matter, Mr. Toppings filed suit in Lincoln County on August 5, 1993. After a trial on May 29 and 30, 1995, the jury returned a ten thousand, three hundred dollar ($10,300) verdict in favor of Mr. Toppings. The $10,300 reflects the price difference between a similar home and the allegedly bargained-for Rainbow home.

After the verdict, Rainbow filed a motion for judgment notwithstanding the verdict and a motion for a new trial. After the circuit court denied Rainbow's motions, Rainbow appealed to this Court asserting several assignments of error.[4]

## II.

### *Discussion*

■ Although Rainbow raised several assignments of error, the most important concerns the circuit court's refusal to direct a verdict against Mr. Toppings based on the U.C.C. Statute of Frauds, *W.Va.Code,* 46–2–201 [1963]. Rainbow maintains that because the mobile home sales price exceeded $500, the alleged oral contract is unenforceable because there is no writing indicating the existence of a contract. In response to Mr. Toppings' argument that the document fulfilled the writing requirement of the Statute of Frauds, Rainbow argues that there is no signature by an officer of the company as

---

**3.** The record indicates that delivery and set-up charges were included in the purchase price of the new mobile home.

**4.** Because we found merit in Rainbow's assignment of error concerning *W.Va.Code,* 46–2–

201(1) [1963], there is no reason to address the other assignments of error, and therefore, we decline to do so.

required by the document. Mr. Toppings maintains that in this context, Rainbow's printed name acts as a signature, thus fulfilling the requirements of the Statute of Frauds. The central question is whether Rainbow's printed name, without the written signature of an officer of Rainbow, is sufficient.

*W.Va.Code,* 46–2–201(1) [1963] of the Statute of Frauds states:

Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense *unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.* A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing. (emphasis added).

*W.Va.Code,* 46–2–201(1) [1963], the Uniform Commercial Code Statute of Frauds, makes three definite and invariable requirements for a memorandum to be sufficient to enforce a contract. First, the memorandum must evidence a contract for the sale of goods for the price of $500 or more; second, it must be "signed," which includes an authentication by the party against whom enforcement is sought; and third, it must specify a quantity.

In this case, the "signing" requirement is at issue because the document had Rainbow's printed name but lacked the signature of an officer of Rainbow, as required by the plain and clear language of the document. *See* note 2 for the signature section of the document.

The Official Comment to *W.Va.Code,* 46–2–202 [1963] refers to *W.Va.Code,* 46–1–201 [1993] for a discussion of the signing requirement. Subsection 39 of *W.Va.Code,* 46–1–201 [1993], the general definition section, provides:

"Signed" includes any symbol executed or adopted by a party with present intention to authenticate a writing.

Section 39 of the Official Comment to *W.Va.Code,* 46–1–201 [1993] provides:

"Signed". New. The inclusion of authentication in the definition of "signed" to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.

Based on the Uniform Commercial Code definition section, *W.Va.Code,* 46–1–201(39) [1993], a billhead, letterhead or other printed name, if "executed or adopted by a party with present intention to authenticate a writing" can fulfill the signing requirement of *W.Va.Code,* 46–2–201(1) [1963].

In this case, Rainbow maintains that its printed name, without the signature of a corporate officer as required by the document, cannot, as a matter of law, satisfy the signing requirement of *W.Va.Code,* 46–2–201 [1963]. Mr. Toppings argues that the printed name was authenticated by the circumstances and conduct of the parties.

■ Our general approach to contract law is helpful when we consider the sufficiency of a "writing" under the U.C.C. Statute of Frauds, *W.Va.Code,* 46–2–201(1) [1963]. It is a settled principle, long recognized in this State that " '[i]t is the province of the Court, and not of the jury, to interpret a written contract.' Syl. Pt. 1, *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937)." Syl. pt. 1, *Orteza v. Monongalia County General Hospital,* 173 W.Va. 461, 318 S.E.2d 40 (1984). In *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 62, n. 18, 459 S.E.2d 329 339 n. 18 (1995), we said:

While the determination of what constitutes a contract under our relevant cases is a question of law, the determination of whether particular circumstances fit within

the legal definition of a contract under our cases is a question of fact. Subject to one exception, the determination of factual issues is solely within the province of the jury. Of course, that exception is Rule 56 dealing with summary judgments. *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964). Furthermore, we agree with the Ninth Circuit Court of Appeals that " '[i]n interpreting a contract, a court determines the existence of an ambiguity as a matter of law.' " *United States v. Johnson*, 43 F.3d 1308, 1310 (9th Cir.1995), *quoting Bauhinia Corp. v. China Nat'l Mach. & Equip. Import & Export Corp.*, 819 F.2d 247, 249 (9th Cir.1987).

■ Because a *de novo* standard of review is applied to questions of law, we review *de novo* the legal question of whether a contract or, in this case a writing, is ambiguous. "Whether a contract is ambiguous is a legal question reviewable by this Court *de novo. See Thrift v. Hubbard*, 44 F.3d 348, 357–58 (5th Cir.1995)." *Williams v. Precision Coil, Inc.*, 194 W.Va. at 64 n. 23, 459 S.E.2d at 342 n. 23.

■ Our traditional rule of contract interpretation is that a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed. The rule is set forth in Syllabus Point 1 of *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), which states:

A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.

*See* Syllabus Point 2, *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d 40 (1984) ("Where the terms of a contract are clear and unambiguous, they must be applied and not construed"). The function of the court is to interpret and enforce written agreements and not to make, extend or limit the written agreement. Syllabus Point 3 of *Cotiga Development Co. v. United Fuel Gas Co., supra* states:

It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.

In Syllabus Point 13, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907), we gave the following definition of ambiguity:

Ambiguity in a statute or other instrument consists of susceptibility of two or more meanings and uncertainty as to which was intended. Mere informality in phraseology or clumsiness of expression does not make it ambiguous, if the language imports one meaning or intention with reasonable certainty.

*See Williams v. Precision Coil, Inc.*, 194 W.Va. at 64 n. 23, 459 S.E.2d at 342 n. 23; *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 432, 345 S.E.2d 33, 35 (1986).

In this case, the document is not ambiguous. The requirement of a signature of an officer of Rainbow is not susceptible to any other meaning. *See* note 2 for the signature section of the document. According to the plain language of the document, it is "Not Valid Unless Signed and Accepted by an Officer of the Company." The document by its clear and unambiguous terms limits authentication of its printed name to the signature of an officer of Rainbow.

■ We find that the circuit court erred in failing to find as a matter of law that the document failed to meet the signature requirement of the U.C.C. Statute of Frauds, *W.Va.Code*, 46–2–201(1) [1963]. Thus the contract in this case, which is for $500 or more is unenforceable under *W.Va.Code*, 46–2–210(1) [1963]. The circuit court should not have submitted the matter to the jury because the plain language of the document did not raise a factual issue because the only way that the printed name on the document could be authenticated was by the acceptance and signature of an officer of Rainbow.

For the above stated reasons, the decision of the Circuit Court of Lincoln County is reversed.

Reversed.

STARCHER, J., dissents and reserves the right to file an OPINION.

STARCHER, Justice, dissenting:

I dissent because the majority uses an overly legalistic argument to reach a very unequitable result, a result which deprives an individual of the benefits of his contract and encourages deceptive sales practices.

Mr. Toppings wanted to buy a mobile home, and he negotiated with Rainbow Homes, Inc. The parties reached an agreement, an oral agreement, which was written down in detail by the Rainbow salesperson on a pre-printed form labeled "**A PLAIN LANGUAGE PURCHASE AGREEMENT.**"[1] Both parties agree that the purpose of this writing was to aid Mr. Toppings in securing financing from some entity other than the finance company associated with Rainbow. The signature lines for acceptance by the buyer, Mr. Toppings, were blank, but Rainbow's name was pre-printed, by it, on the signature line for the seller.

The glitch is that the "**A PLAIN LANGUAGE PURCHASE AGREEMENT**" in very fine print under the signature line pre-printed with "RAINBOW HOMES, INC.," said "Not Valid Unless Signed and Accepted by an Officer of the Company," in other words that the acceptance and signature of an officer of the company was required.

Focusing exclusively on the "Not Valid Unless Signed and Accepted by an Officer of the Company," the majority found that the "**A PLAIN LANGUAGE PURCHASE AGREEMENT**" with the pre-printed signature "RAINBOW HOMES, INC." could not, as a matter of law, be a signed "writing" to avoid the U.C.C. Statute of Frauds.

The majority discounts the circuit court's finding that this document was ambiguous because it was internally inconsistent, namely, the use of fine print to take away that offered in readable print. The circumstances raised an issue of fact concerning whether Rainbow's pre-printed name could be authenticated by the numerous acts of Rainbow. The form was Rainbow's; the information on the form was completed by Rainbow; the reason for completion of the form was to secure outside financing, which requires accurate financial information; Rainbow's salesperson acted as if this was a valid agreement; and Rainbow gave Mr. Toppings a copy of the form. The jury was properly instructed on the requirement of an authentication of the printed signature and returned a verdict in favor of Mr. Toppings.

All of the circumstances, except for "Not Valid Unless Signed and Accepted by an Officer of the Company," on Rainbow's "**A PLAIN LANGUAGE PURCHASE AGREEMENT**" support the jury's verdict.

I would affirm the circuit court finding of an ambiguous document and the jury's decision giving Mr. Toppings the benefit on his contract thus denying Rainbow the benefits of its deceptive "**A PLAIN LANGUAGE PURCHASE AGREEMENT.**"

---

1. The material quoted from "A Plain Language Purchase Agreement" is in a similar style and size found in the original document.