503 S.E.2d 528

**Melanie P. JESSEE (formerly Aycoth), Plaintiff below, Appellant,**

v.

**Edward D. AYCOTH, Defendant below, Appellee.**

No. 24476.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1998.

Decided June 12, 1998.

Dissenting Opinion of Justice Workman July 2, 1998.

Harold B. Wolfe, III, Akers & Wolfe, Princeton, and Winifred Bucy, Beckley, for Appellant.

Debra Kilgore, Burton & Kilgore, Princeton, for Appellee.

## PER CURIAM: [1]

The appellant, Melanie Jessee (formerly Aycoth), seeks reversal of an April 22, 1997 order of the Mercer County Circuit Court requiring the appellant to sell her residence and divide the proceeds with the appellant's former spouse, appellee Edward Aycoth. Appellant argues that the circuit court erred in determining that the settlement agreement which had been incorporated into the parties' divorce decree was ambiguous, and that the circuit court erred in ordering her to sell the residence. We affirm the order of the Mercer County Circuit Court.

### I.

On August 15, 1986, the appellant and the appellee Edward Aycoth were divorced. The order of divorce incorporated a separation agreement which covered the division of property, child custody, and support. Included in this settlement agreement was a provision providing for the appellant to retain the exclusive use of the marital residence; specifically, the agreement stated, in part:

3. Melanie [the appellant] shall retain and keep possession of the residential premises of the parties, situate in Boulder Park,

Princeton, Mercer County, West Virginia. Edward [the appellee] shall pay all taxes, mortgage payments, or loss or casualty insurance premiums, upon said residence. Melanie shall pay all other expenses attendant to her residence therein; necessary repairs and maintenance shall be paid equally. Melanie shall have the sole right to market and agree to the sale of said residential premises, and Edward shall execute such agreements or documents as may be necessary to effectuate any sale, including realtor's listing agreement ... at closing, the parties shall divide and receive equal shares of the equity in said residential premises, which is expressly stated to be: the difference between the sale price; less realtor's commission; less attorneys fees, excise taxes, prorata real estate taxes, recording fees, document preparation fees, and other usual closing costs; the balance necessary to pay off the purchase money, first in priority, deed of trust.

Following the divorce, the parties' only child remained in the marital residence with the appellant until the child left home to attend college. After the child left the residence, the appellee through his attorney contacted the appellant and inquired when the appellant was going to place the marital residence on the market for sale. When no action was taken by the appellant to sell the marital residence, the appellee filed a petition for contempt, requesting that the circuit court order the appellant to sell the marital residence.

The appellant replied to the petition and counter-petitioned for alternative relief requesting child support for the time periods in which the child was home from college, the residence being the home to which the child returned on college breaks. In a subsequent motion, the appellant requested that if the court should determine that the appellant was required to sell the marital residence, the issue of equitable distribution should be reviewed.[2]

---

1. We point out that a *per curiam* opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. Both the counter-petition requesting additional child support and motion requesting review of the equitable distribution were denied by the circuit court, but only the issue of equitable distribution was appealed. Therefore, the issue of

Memoranda were submitted by both parties concerning the settlement agreement. After an examination of the memoranda and the settlement agreement, the trial judge determined that the settlement agreement was "vague and uncertain." The trial court set a hearing to allow parol evidence to be offered to determine the effect of the agreement. After hearing parol evidence concerning the intent of the parties and examining the law, the court concluded that nothing in the agreement precluded the marital residence from being sold upon the child reaching 18 years of age. The court ordered the appellant to place the marital residence on the market for sale, with the proceeds of the sale to be divided according to the settlement agreement.

## II.

■ When a trial court determines that an agreement is ambiguous and construes the meaning of a provision in the contract based on extrinsic evidence, such as the parties' intent, our standard of review is "clearly erroneous." *Fraternal Order of Police, Lodge Number 69 v. City of Fairmont*, 196 W.Va. 97, 100, 468 S.E.2d 712, 715 (1996).

■ The appellant argues that the settlement agreement was clear and not ambiguous concerning the marital residence. We agree that a mere difference of interpretation between the parties will not render a provision in a contract ambiguous:

> The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court.

Syllabus Point 1, *Berkeley Co. Pub. Ser. Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968). A contract is considered ambiguous if it is "reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 65 n. 23, 459 S.E.2d 329 342 n. 23 (1995). We have also defined ambiguity as:

> Ambiguity in a statute or other instrument consists of susceptibility of two or more meanings and uncertainty as to which was intended. Mere informality in phraseology or clumsiness of expression does not make it ambiguous, if the language imports one meaning or intention with reasonable certainty.

Syllabus Point 13, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907). *In accord, Toppings v. Rainbow*, 200 W.Va. 728, 733, 490 S.E.2d 817, 822 (1997).

■ In the instant case, the provision in the settlement agreement relating to the marital residence was clear and unambiguous as to the division of duties and the division of equity. However, the provision was entirely silent regarding *when the residence was to be sold.* Therefore, the lower court was correct to admit parol evidence, in order to ascertain the intent of the parties. "Prior or contemporaneous parol statements may not be admitted to vary written contracts, but may be admitted to explain uncertain, *incomplete* or ambiguous contract terms." Syllabus, *Holiday Plaza, Inc. v. First Federal Savings and Loan Association of Clarksburg*, 168 W.Va. 356, 285 S.E.2d 131 (1981) (emphasis added).

In *Fraternal Order of Police* we noted:

> If an inquiring court concludes that an ambiguity exists in a contract, the ultimate resolution of it typically will turn on the parties' intent. Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document. When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent.

*Fraternal Order of Police*, 196 W.Va. at 101 n. 7, 468 S.E.2d at 716 n. 7 (1996).

■ In addition to hearing parol evidence on the issue of the sale of the marital residence, the trial court also examined the law that was in effect when the settlement agreement was signed relating to the use of a marital home when divorced parties had minor children. In 1986, our statutes allowed

additional child support will not be addressed in this opinion.

courts to grant the exclusive use and occupancy of the marital residence to one of the divorcing parties, but stated:

> [e]xcept in extraordinary cases supported by specific findings set forth in the order granting relief, a grant of the exclusive use and occupancy of the marital home shall be limited to those situations where such use and occupancy is reasonably necessary to accommodate the rearing of minor children.

*W.Va.Code,* 48–2–15(b)(4) [1986].[3]

Also, in 1986, this Court had decided the case *McKinney v. McKinney,* 175 W.Va. 640, 337 S.E.2d 9 (1985), in which we stated:

> Except in extraordinary cases, the right to the exclusive use and occupancy of the marital home terminates when such use and occupancy is no longer necessary to accommodate the rearing of minor children. *W.Va.Code* 48–2–15(b)(4) [1984].

Syllabus Point 2 of *McKinney, supra.*

This Court has discussed the significance of the marital residence being awarded to the custodial parent. In *Murredu v. Murredu* we held:

> A trial court in the exercise of its sound discretion under the provisions of W.Va. Code 48–2–15, may award the exclusive use of the home property to a spouse incident to obtaining custody of the children.

Syllabus Point 2, *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977), *overruled on other grounds; Patterson v. Patterson,*

167 W.Va. 1, 5 n. 1, 277 S.E.2d 709, 712 n. 1 (1981). *In accord, Blevins v. Shelton,* 181 W.Va. 544, 547, 383 S.E.2d 509, 512 (1989); *Fischer v. Fischer,* 175 W.Va. 753, 755, 338 S.E.2d 233, 235 (1985); *Stillings v. Stillings,* 167 W.Va. 796, 797, 280 S.E.2d 689, 690 (1981).

Here, the only child of the divorced parties was beyond 18 years of age, and had, for the most part, moved from the residence. We cannot find that the circuit court was clearly erroneous in ordering the appellant to sell the marital residence.

■ The final argument of the appellant is that the circuit court erred in denying appellant's motion for a re-examination of the issue of equitable distribution, under her request for alternative relief. The decision of the circuit court did not alter the original agreement reached between the appellant and the appellee. Rather, after considering the evidence, the circuit court determined the exact terms of the incomplete settlement agreement. *See Yoho v. Borg–Warner Chemicals,* 185 W.Va. 265, 266, 406 S.E.2d 696, 697 (1991). Therefore, the circuit court was correct to deny the appellant's motion.

### III.

Accordingly, the circuit court's order of April 22, 1997 is affirmed.

Affirmed.

---

**3.** *W.Va.Code,* 48–2–15(b)(4) [1986] provided:

As an incident to requiring the payment of alimony or child support, the court may grant the exclusive use and occupancy of the marital home to one of the parties; together with all or a portion of the household goods, furniture and furnishings reasonably necessary for such use and occupancy. Such use and occupancy shall be for a definite period, ending at a specific time set forth in the order, subject to modification upon the petition of either party. Except in extraordinary cases supported by specific findings set forth in the order granting relief, a grant of the exclusive use and occupancy of the marital home shall be limited to those situations where such use and occupancy is reasonably necessary to accommodate the rearing of minor children of the parties. The court may require payments to third parties in the form of home loan installments, land contract payments, rent, payments for utility services, property taxes, insurance coverage, or other expenses or charges reasonably necessary for the use and occupancy of the marital domicile. Payments made to a third party pursuant to this subdivision for the benefit of the other party shall be deemed to be alimony, child support or installment payments for the distribution of marital property, is such proportion as the court shall direct: Provided, that if the court does not set forth in the order that a portion of such payments is to be deemed child support or installment payments for the distribution of marital property, then all such payments made pursuant to this subdivision shall be deemed to be alimony. Nothing contained in this subdivision shall abrogate an existing contract between either of the parties and a third party, or affect the rights and liabilities of either party or a third party under the terms of such contract.

**220**

WORKMAN, Justice, dissenting:

(Filed July 2, 1998)

I disagree with the majority's opinion that the Property Settlement Agreement is ambiguous. The Agreement clearly states, in pertinent part, "Melanie shall retain and keep possession of the residential premises of the parties, situate in Boulder Park, Princeton, Mercer County, West Virginia.... Melanie shall have the sole right to market and agree to the sale of said residential premises...."

Nothing in the Agreement provides that the home shall be sold upon the child's emancipation. The lower court concluded that nothing in the agreement *precluded* the marital residence from being sold upon the child reaching 18 years of age. However, I would note that nothing in the agreement *mandated* the sale of the marital residence upon the child's majority. The majority finds the failure of the Agreement to state a time when the residence was to be sold renders the Agreement ambiguous. However, the Agreement is not silent on this issue. The Agreement expressly provides that Melanie **shall** retain possession of the home and **shall** have the **sole** right to market the sale of the home.

This Court has consistently held that a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed. *See Clint Hurt & Associates, Inc. v. Rare Earth Energy, Inc.*, 198 W.Va. 320, 480 S.E.2d 529 (1996), *Dawson v. Norfolk and Western Ry. Co.*, 197 W.Va. 10, 475 S.E.2d 10 (1996), *VanKirk v. Green Const. Co.*, 195 W.Va. 714, 466 S.E.2d 782 (1995), *Watts v. West Virginia Dept. of Health and Human Resources/Division of Human Services*, 195 W.Va. 430, 465 S.E.2d 887 (1995), *HN Corp. v. Cyprus Kanawha Corp.*, 195 W.Va. 289, 465 S.E.2d 391 (1995), *Raines v. White*, 195 W.Va. 266, 465 S.E.2d 266 (1995), *Akers v. West Virginia Dept. of Tax and Revenue*, 194 W.Va. 456, 460 S.E.2d 702 (1995), *Scyoc v. Holmes*, 192 W.Va. 87, 450 S.E.2d 784 (1994), *Fraley v. Family Dollar Stores of Marlinton, West Virginia, Inc.*, 188 W.Va. 35, 422 S.E.2d 512 (1992), *Billiter v. Melton Truck Lines, Inc.*, 187 W.Va. 526, 420 S.E.2d 286, and 187 W.Va. 526, 420 S.E.2d 286 (1992), *Sally–Mike Properties v. Yokum*, 175 W.Va. 296, 332 S.E.2d 597 (1985).

As the Agreement was not ambiguous, the lower court should not have used parole evidence to alter the terms of the contract. In this case, the lower court created an ambiguity which did not exist in order to alter the terms of the parties' agreement. "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. pt. 1, *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161 (1995).

It appears that the court here determined that there was an ambiguity in order to render what the court believed to be a fairer result. Perhaps it was fairer. But that is not the proper role of a court. Both of these parties were represented by lawyers in the negotiation of this agreement, and presumably the husband's lawyer should have been sufficiently competent to have included in the agreement the provision which the court imposed, if that was the intention of the parties at the time of the making of the agreement. Courts should not be in the clean-up business for lawyers.

Contracts containing unambiguous language must be enforced according to their plain and natural meaning. The Property Settlement Agreement plainly states that Melanie has the sole right to place the home on the market. The lower court's conclusion that the Agreement compelled Melanie to sell the home upon the child's emancipation is clearly contrary to the unequivocal language of the contract.