575 S.E.2d 315

**Samuel HARRIS, Plaintiff Below, Appellant,**

v.

**Michele D. HARRIS, Defendant Below, Appellee.**

No. 30594.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2002.

Decided Dec. 3, 2002.

Mark A. Blevins, Esq., Quan Le, Esq., Wheeling, for Appellant.

David C. White, Esq., Neiswonger & White, Moundsville, for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Marshall County entered on October 5, 2001. In that order, the circuit court denied a motion to alter or amend a judgment and an alternative motion for a new trial filed by the appellant and plaintiff below, Samuel Harris, after the court found him in contempt for failing to pay the appellee and defendant below, Michelle D. Harris, $50,000.00 pursuant to a property settlement agreement[1] signed by the parties in the underlying divorce action. The court further ordered Mr. Harris to pay Ms. Harris $7,468.60 plus interest for certain medical bills she incurred during their marriage.

In this appeal, Mr. Harris contends that the circuit court misinterpreted the parties' property settlement agreement, and therefore, the circuit court erred by holding him in contempt. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, we reverse, in part, and affirm, in part, the circuit court's decision holding Mr. Harris in contempt.

## I.

### FACTS

The parties were married on July 15, 1988, and separated on July 1, 1996. A final divorce order was entered on September 6, 1996. The final divorce order incorporated a property settlement agreement which the parties signed on August 1, 1996.

The property settlement agreement addressed, *inter alia*, the distribution of any monies the parties might receive from two lawsuits. The agreement specifically provided that each party would receive:

½ of any and all amounts received from the settlement or verdict or mediation pertaining to an insurance company bad faith action against McDonough Caperton Insurance Company and USF&G [2]

and

½ of all amounts received from the settlement, verdict or mediation pertaining to a personal injury case involving physical injury to Husband and ½ of all funds received regarding the accompanying claim for loss of consortium.

The agreement also provided that Mr. Harris would maintain health insurance coverage for Ms. Harris until her remarriage or death and that he would "pay medical bills incurred at Wheeling Hospital during the marriage which have not yet been paid."

On July 16, 1998, Ms. Harris filed a Petition for Contempt in the Circuit Court of Marshall County alleging that Mr. Harris had failed to comply with the property settlement agreement. Specifically, she asserted that Mr. Harris had not given her one-half of the proceeds resulting from the settlement of the bad faith lawsuit. She further asserted that Mr. Harris had failed to pay certain hospital bills which she had incurred during their marriage.

The record shows that during the marriage, the parties were stockholders in a mobile home business known as Housing Showcase Mobile Homes, Inc. (hereinafter "Housing Showcase"). Sometime before the parties separated, Housing Showcase was named as a defendant in a series of lawsuits arising out of the wreck of one of its mobile homes which was being transported incident

---

1. For clarification purposes, we note that the document at issue is entitled "Separation Agreement," but was referred to in the final divorce order as a property settlement agreement. Thus, we will refer to the document in this opinion as the "property settlement agreement" or "the agreement."

2. USF&G refers to the United States Fidelity and Guaranty Company.

to its sale. Eventually, Housing Showcase filed suit against McDonough Caperton Insurance Company and USF&G alleging, *inter alia,* that the insurance companies had failed to provide a defense for Housing Showcase in the lawsuits arising from the wreck of the mobile home.

Shortly before the parties separated, they contemplated filing their own personal bad faith lawsuit against McDonough Caperton Insurance Company and USF&G based on the companies' actions following the wreck of the mobile home. However, after the parties signed the property settlement agreement, they decided, upon advice of counsel, not to file the bad faith lawsuit against McDonough Caperton Insurance Company and USF&G.[3] Thereafter, Housing Showcase settled its lawsuit against McDonough Caperton Insurance Company and USF&G for $100,000.00.[4]

On April 3, 2000, the circuit court held a bench trial on the Petition for Contempt filed by Ms. Harris. After reviewing the evidence, the circuit court entered an order on September 5, 2001, finding Mr. Harris in contempt and ordering him to pay Ms. Harris the sum of $50,000.00, without interest, as her net share of the settlement of the lawsuit filed by Housing Showcase against McDonough Caperton Insurance Company and USF&G. The court further ordered Mr. Harris to pay Ms. Harris $7,468.60 plus interest for medical bills she incurred at Wheeling Hospital during the marriage which had not yet been paid. Subsequently, Mr. Harris filed a motion to alter or amend the judgment and an alternative motion for a new trial. The motions were denied in the final order entered on October 5, 2001. This appeal followed.

## II.

### STANDARD OF REVIEW

As noted above, Mr. Harris appeals from an order denying his motion to alter or amend the judgment finding him in contempt. This Court has held that, "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syllabus Point 1, *Wickland v. American Travellers Life Insurance Co.,* 204 W.Va. 430, 513 S.E.2d 657 (1998). Since the underlying judgment is the September 5, 2001 order finding Mr. Harris in contempt, we must apply the standard of review applicable to such a proceeding. In Syllabus Point 1 of *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996), this Court held that:

> In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

We also note that a clearly erroneous standard of review is applicable to the court's interpretation of the parties' property settlement agreement. This Court has stated that: "When a trial court determines that an agreement is ambiguous and construes the meaning of a provision in the contract based on extrinsic evidence, such as the parties' intent, our standard of review is 'clearly erroneous.'" *Jessee v. Aycoth,* 202 W.Va. 215, 218, 503 S.E.2d 528, 531 (1998). With these standards in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

#### A. The Lawsuit Proceeds

Mr. Harris contends that the circuit court misinterpreted the parties' property settlement agreement. He asserts that the

---

3. Apparently, the parties were advised that they lacked standing to pursue their personal lawsuit against McDonough Caperton Insurance Company and USF&G because they were not personally injured.

4. Housing Showcase's attorney retained $40,000 of the settlement money as his contingency fee for resolving the lawsuit.

only reasonable interpretation of the provision in the agreement which concerns "an insurance company bad faith action" is that it references the personal bad faith lawsuit the parties contemplated filing against McDonough Caperton Insurance Company and USF&G before they separated. Mr. Harris says the agreement does not refer to the Housing Showcase lawsuit because neither he or Ms. Harris had a personal stake in that action. In other words, he claims that the Housing Showcase lawsuit was not a personal asset subject to equitable distribution in the parties' divorce.

By contrast, Ms. Harris contends that the lawsuit filed by Housing Showcase against McDonough Caperton Insurance Company and USF&G is the "bad faith action" referenced in the property settlement agreement. She claims that although the lawsuit was filed by Housing Showcase, the action was brought to recover money she and Mr. Harris spent on behalf of the corporation. Thus, she maintains that the evidence supports the circuit court's finding of contempt against Mr. Harris.

This Court has observed that: "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syllabus Point 1, *Berkeley County Pub. Serv. Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968). Generally, "[a] contract is considered ambiguous if it is 'reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction.'" *Jessee*, 202 W.Va. at 218, 503 S.E.2d at 531 (*quoting Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 65 n. 23, 459 S.E.2d 329, 342 n. 23 (1995)). In order to resolve ambiguity in a contract, the intent of the parties must be ascertained. "Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document. When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent." *Fraternal Order of Police, Lodge Number 69 v. City of Fairmont*, 196 W.Va. 97, 101 n. 7, 468 S.E.2d 712, 716 n. 7 (1996).

In the instant case, the circuit court found that the property settlement agreement was ambiguous and allowed the parties to testify with regard to their intentions at the time the agreement was executed. The court then found that the "testimony herein clearly shows that there is no mistake as to the lawsuit in question." Without further explanation, the circuit court summarily concluded that the lawsuit referenced in the property settlement agreement was the civil action filed by Housing Showcase against McDonough Caperton Insurance Company and USF&G.

We believe that the circuit court's determination that the agreement is ambiguous with respect to the provision regarding the "bad faith action" was correct. The agreement is vague in that regard and fails to identify a specific lawsuit. Given the fact that the parties were involved in multiple lawsuits at the time the agreement was signed, the provision relating to a "bad faith action" is clearly ambiguous. However, after thoroughly reviewing the entire record, including the parties' testimony, we find that the circuit court clearly erred by finding that the agreement was referring to the Housing Showcase lawsuit.

The agreement at issue was executed for the purpose of dividing the parties' personal assets and debts. The circuit court essentially found that the Housing Showcase lawsuit was a personal asset of the parties. The court stated that "the corporation and the parties were indistinguishable." However, the record does not support such a conclusion. The evidence clearly shows that the parties were not the only stockholders of Housing Showcase. Documents issued by Housing Showcase indicate that there were at least three additional stockholders at the time the agreement at issue was executed. Thus, the evidence does not support the court's finding that the Housing Showcase lawsuit was a personal asset of the parties.

Furthermore, other than Ms. Harris' testimony, there is no evidence that the parties even contemplated dividing up the proceeds

of the lawsuit brought by Housing Showcase. While Ms. Harris testified that the parties' personal funds were used to finance the Housing Showcase lawsuit, documents submitted by Mr. Harris show that the corporation used commercial loans to pay its legal fees.

It appears that the circuit court simply discounted the evidence showing that the parties contemplated filing their own personal bad faith lawsuit against McDonough Caperton Insurance Company and USF&G shortly before they separated and executed the property settlement agreement. Essentially, the circuit court concluded that the parties intended to distribute the proceeds of the Housing Showcase lawsuit which were clearly not their personal property, yet chose to ignore the possible proceeds of the personal bad faith lawsuit which they were intending to file at the time the property settlement agreement was executed. The evidence simply does not support that conclusion.

In summary, we find that the circuit court clearly erred by interpreting the property settlement agreement as referencing the lawsuit brought by Housing Showcase rather than the personal bad faith lawsuit being prepared by the parties at the time the agreement was executed. Therefore, the circuit court's decision is reversed to the extent that it holds Mr. Harris in contempt and orders him to pay Ms. Harris $50,000 of the proceeds resulting from the settlement of the lawsuit filed by Housing Showcase against McDonough Caperton Insurance Company and USF&G.

### B. The Medical Expenses

■ Mr. Harris also contends that the circuit court erred by interpreting a provision in the property settlement agreement apportioning the parties' debts as requiring him to pay Ms. Harris $7,468.60 for medical bills she incurred while they were married. He contends that Ms. Harris did not cooperate in filling out forms so that the bills would be paid by his insurance company, and therefore, he should not have to reimburse her for those expenses.

Ms. Harris contends, however, that Mr. Harris must pay these medical expenses pursuant to the agreement. We agree. The property settlement agreement clearly provides that Mr. Harris will "maintain in full force and effect" health insurance covering Ms. Harris. In addition, the agreement specifically states that, "Husband shall pay medical bills incurred at Wheeling Hospital during the marriage which have not yet been paid." The evidence presented at the contempt proceeding established that Mr. Harris had not paid the medical bills incurred by Ms. Harris at Wheeling Hospital while they were married. Accordingly, the circuit court's decision finding Mr. Harris in contempt for failing to pay Ms. Harris' medical expenses and ordering him to pay her $7,468.60 plus interest is affirmed.

## IV. CONCLUSION

Accordingly, as set forth above, the decision of the Circuit Court of Marshall County holding Mr. Harris in contempt is affirmed, in part, and reversed, in part.

Affirmed, in part, and Reversed, in part.