BENJAMIN W. HEARD, plaintiff in error *vs.* WILLIAM R. CALLAWAY, defendant in error.

1. It does not necessarily follow because the sheriff would be liable under the law in an action on the case against him, that he would be liable to an attachment for contempt of court. The latter proceeding would depend on the good faith of his conduct in view of the circumstances under which he acted, of which the court is to judge.

2. The question made by the affidavit of illegality being one of doubt and difficulty for even judicial officers to decide, it was not error in the court to decline to render a rule absolute against the sheriff for refusing to disregard it.

Sheriff. Contempt. Rule against officer. Before Judge POTTLE. Wilkes Superior Court. November Adjourned Term, 1873.

For the facts of this case, see the decision.

W. G. JOHNSON, for plaintiff in error.

W. M. & M. P. REESE, for defendant.

WARNER, Chief Justice.

The plaintiff obtained a rule against the sheriff of Wilkes county calling upon him to show cause why he should not pay to the plaintiff the amount of two executions issued on two judgments against Worthen, the defendant therein, one of which was obtained in 1860, the other in 1867. The sheriff made his return to the rule, in writing, which was sworn to, and not traversed by the plaintiff. The court, after hearing and considering the sheriff's answer to the rule, discharged the same. Whereupon the plaintiff excepted.

1. It appears from the sheriff's answer that he levied the executions on the land of the defendant, and advertised the same for sale on the first Tuesday in November, 1873, and was proceeding to sell the same when he was served with an affidavit of illegality made by the defendant, in which he alleged that the two executions were proceeding illegally against him, because the defendant was, on the 24th of October, 1873, adjudged a bankrupt, and that the land levied on was all the realty owned by defendant, and was worth less than the exemption of realty allowed him by the amendatory act of Congress, and that all of said land had been included in his schedule returned to the bankrupt court. The sheriff also stated in his answer that the land levied on had been set apart as a homestead by the ordinary, in 1870, for the bene-

fit of the defendant's wife and children, as provided by the constitution and laws of this state; that the whole matter was surrounded with difficulties and could not be properly solved by him without the adjudication of the court, to which he returned the proceedings to be decided by the court; that he desired to do his duty, and in all his conduct acted with the utmost good faith. It also appears from the record in the case, that the plaintiff contested the defendant's right to a homestead before the ordinary, and took an appeal from his decision, allowing it to go to the superior court, and whilst pending there, it was by *consent* withdrawn, and the approval of the ordinary allowing the homstead confirmed. The main controlling question in this case is whether the court erred in refusing to make the rule absolute against the sheriff as being in contempt of the court, in failing to make the money due the plaintiff on the executions placed in his hands, on the statement of facts disclosed by the sheriff in his answer. The defendant had obtained a homestead exemption of the land levied on which was not ·worth more than the exemption allowed by the laws of this state in 1871. The defendant had been adjudged a bankrupt, and by the act of congress of 1873, he was entitled to the same exemption as allowed by the laws of this state in 1871. It is true the exemption had not been formally awarded to the defendant by the judgment of the bankrupt court at the time the sheriff suspended the sale of the land, when the affidavit of illegality was served on him.

Did the sheriff, by suspending the sale of the land and returning the affidavit of illegality to the court for its judgment, under the statement of facts disclosed in his answer, subject himself to be attached for contempt of court in failing to execute the process of the court? By the 3949th section of the Code it is declared that the sheriffs of this state shall be liable to an action on the case, or an attachment for contempt of court, at the option of the party, whenever it appears that such sheriffs have injured such party, either by a false return or by neglecting to arrest a defendant, or to levy

on the property of the defendant, or to pay over to the plaintiff or his attorney any moneys collected by such sheriff by virtue of any *fi. fa.* or other legal process, or to make proper return of any writ, execution, or other process put into the hands of such sheriff. The 3954th section provides, that when the officer is called only by rule *nisi*, he shall fully respond in writing to said rule, under oath, and if the answer is not denied, the rule shall be discharged or made absolute, according as the court may deem the answer sufficient or not, the movant having the right to traverse the truth of such answer. Whether the sheriff would have been liable to the plaintiff in an action on the case under the law, is not the question now before us, but the question here is, whether the court erred in discharging the rule against the sheriff for *contempt of court* on the uncontroverted facts stated in his answer. It does not necessarily follow because the sheriff would be liable under the law in an action on the case against him, that he would be liable to an attachment for contempt of court. The latter proceeding would depend on the good faith of his conduct, in view of the circumstances under which he acted, of which the court is to judge. In the former case, if he is liable under the law, in other words, if the law will not protect him from liability to the plaintiff when sued for neglect of duty, then the court would be bound to administer the law applicable to the facts of the case, although the sheriff might have acted with entire good faith. In the one case, the court may exercise its discretion whether it will attach him for contempt of court or not. In the other, it would have no discretion but to administer the law applicable to the rights of the parties as shown by the evidence in the case, and render its judgment in accordance therewith.

2. Whether the defendant was entitled to his exemption of the land levied on in the bankrupt court, as alleged in the defendant's affidavit of illegality, was a question of doubt and difficulty for even judicial officers to decide, much more was it so for the sheriff, who is a mere ministerial officer, and we cannot say that he was liable to be attached for contempt of

court in suspending the sale of the land when the affidavit of illegality was served upon him, and returning the proceedings to the court for its judgment thereon. Speaking for myself alone, I am not willing to say that the federal congress has the power to pass a law retroactive in its terms, which will deprive the judgment creditor of his vested right to collect his debt out of the property of his judgment debtor, owned by him at the time of the rendition of his judgment, and vest it in the judgment debtor as a homestead; not because the federal congress has not the power, under the constitution, to impair the obligation of contracts in the enactment of uniform laws on the subject of bankruptcies, but because it is contrary to reason and justice, and to the fundamental principles of the social compact, to take one man's property and give it to another without compensation. That is a power which neither the state legislature nor the federal congress can properly exercise, in my judgment, and until the supreme court of the United States shall so decide, I should be unwilling to so hold.

Let the judgment of the court below be affirmed.