686 S.E.2d 590

**In the Matters of MEGAN B., Amber G.B., William Z.Q.B., and Sheehan B.**

**No. 32722.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2006.

Decided Feb. 17, 2006.

John M. Hedges, Teresa J. Lyons, Byrne & Hedges, Morgantown, WV, for Appellee, Judge Andrew N. Frye, Jr.

Harry A. Smith, III, Jory & Smith, Elkins, WV, for Appellant, Sheriff Charles Kimble.

PER CURIAM:

This is an appeal by former Grant County Sheriff Charles Kimble (hereinafter "Appellant") from an order of the Circuit Court of Grant County holding him in contempt of court for his failure to serve an order to remove children from a home in an abuse and neglect matter. Upon thorough review of the matters presented in this appeal, this Court reverses the determination of the lower court, finding that the contempt order was improper and should be vacated.

I. Factual and Procedural History

On September 10, 2004, the Department of Health and Human Resources (hereinafter "DHHR") applied to Grant County Magistrate Willard L. Earle, II, sitting as a juvenile referee,[1] for an order permitting the DHHR to take four children into State custody in an abuse and neglect proceeding. Magistrate Earle signed[2] the requested or-

---

1. West Virginia Code § 49-1-4(10) (1998) (Repl. Vol. 2004) permits a circuit court to designate one or more magistrates of the county to perform the functions and duties of a juvenile referee.

2. The order also specified that Magistrate Earle

der and sent it to Sheriff Kimble through a DHHR representative with an oral request that the Sheriff promptly serve it on the parents of the juveniles.[3] Sheriff Kimble informed the DHHR representative that he had an important meeting and would be unable to immediately serve the order but could do so in approximately seventy minutes. When Magistrate Earle learned of the Sheriff's refusal to immediately serve the order, he personally went to speak with Sheriff Kimble. Again, the Sheriff explained the situation and informed the Magistrate that he could not immediately serve the order but could serve it seventy minutes later. A state trooper visiting the office offered to serve the order, and the Sheriff maintains that his final understanding of the situation was that the state trooper would "take care of it." The Sheriff testified at the hearing that "that was the end of it and we all went our separate ways." The record reflects that the order did get served by approximately 6:00 or 7:00 p.m. that same evening by the state police.

On September 17, 2004, the lower court entered a show cause order stating that the lower court had become aware of Sheriff Kimble's refusal to serve the emergency order. The show cause order did not include any statement indicating that the proceeding would be in the nature of a contempt proceeding. It explained only that the Honorable Andrew N. Frye, Jr., had learned of the Appellant's "refusal, on September 10, 2004, to accompany the Department of Health and Human Resources Child Protective Services Worker to the ... children's residence to assist in the removal of said children and to serve the parents with the Emergency Removal Order entered by Magistrate Earle." The show cause order further commanded the Sheriff to appear before the circuit court "to show cause why he failed to discharge his statutorily required duties in this matter."

On October 6, 2004, the lower court conducted a hearing in this matter. The Appellant waived his right to have an attorney, and

the lower court did not utilize a prosecutor or empanel a jury. The Appellant and Magistrate Earle testified at the hearing, and the lower court found that the Appellant had failed to serve the order and was therefore in contempt of court as defined by West Virginia Code § 61–5–26 (1923) (Repl. Vol. 2005). The lower court did not specify whether the contempt was criminal or civil in nature.

In an October 12, 2004, written order, the lower court held that the Appellant had failed to exercise his obligation under West Virginia Code § 50–1–14(a) (2004) (Supp. 2005). That statute provides, in part, that the sheriff must "execute all civil and criminal process from any magistrate court which may be directed to such sheriff." The lower court ordered the Appellant to send a letter of apology to the children involved in the underlying abuse and neglect case, to serve ten days in jail, to forfeit ten days' pay, and to place the county deputies on notice that abuse and neglect matters take priority. The jail sentence and the loss of pay were suspended contingent upon the Appellant's completion of 120 hours of community service.

Upon appeal to this Court, the Appellant contends that the contempt order was in the nature of criminal contempt and therefore required the involvement of a prosecutor, a jury trial, and the utilization of the West Virginia Rules of Evidence. Further, the Appellant contends that he did not receive proper notice that the hearing was a contempt proceeding and that the lower court referenced West Virginia Code § 61–5–26 as the basis for its decision, despite the fact that the underlying order was a magistrate order rather than a circuit court order. The Appellant also contends that the evidence was insufficient to support a finding of contempt. The contempt order was stayed pending the outcome of this appeal.

had, by telephonic communication, received oral confirmation of the order from Circuit Judge Phillip Jordan.

3. The record reflects that the need for immediate service of the order arose from the fact that the children had informed authorities that they

would be severely punished at home if their parents learned that they had revealed the existence of abuse and neglect to authorities. Thus, the plan was to intervene and remove the children prior to their arrival home from school.

## II. Standard of Review

■ In syllabus point one of *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996), this Court explained as follows:

In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

*See also Harris v. Harris*, 212 W.Va. 705, 575 S.E.2d 315 (2002).

## III. Discussion

West Virginia Code § 50-1-14(a), in its entirety, provides as follows: "It shall be the duty of each sheriff to execute all civil and criminal process from any magistrate court which may be directed to such sheriff. Process shall be served in the same manner as provided by law for process from circuit courts." The facts presented in this case reveal a situation in which the Sheriff was orally requested to serve the Order Ratifying Emergency Custody, entered by the Magistrate sitting as a juvenile referee assisting the circuit court. However, neither the order itself nor any other paper issued by the court or its clerk directed the Sheriff to serve the order.

West Virginia Code § 61-5-26 governs the issue of punishment for contempt, providing as follows:

The courts and the judges thereof may issue attachment for contempt and punish them summarily only in the following cases: (a) Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice; (b) violence or threats of violence to a judge or officer of the court, or to a juror, witness, or party going to, attending or returning from the court, for or in respect of any act or proceeding had, or to be had, in such court; (c) misbehavior of an officer of the court, in his official character; (d) disobedience to or resistance of any officer of the court, juror, witness, or other person, to any lawful process, judgment, decree or order of the said court. No court shall, without a jury, for any such contempt as is mentioned in subdivision (a) of this section, impose a fine exceeding fifty dollars, or imprison more than ten days. But in any such case the court may impanel a jury (without an indictment or any formal pleading) to ascertain the fine or imprisonment proper to be inflicted, and may give judgment according to the verdict. No court shall impose a fine for contempt, unless the defendant be present in court, or shall have been served with a rule of the court to show cause, on some certain day, and shall have failed to appear and show cause.

It is not clear from the record whether the lower court considered the failure of the sheriff to immediately serve the Magistrate's order to constitute "misbehavior of an officer of the court, in his official character ..." as referenced in subsection (c) above, or whether the Sheriff's conduct was deemed to violate another portion of the statute quoted above. Upon this Court's review of the facts of this case, we do not find any act on the part of the Appellant which is in disobedience to a court order, which constituted misbehavior of the Sheriff in his official character, or which was in violation of West Virginia Code § 61-5-26 in any manner.

■ Under all of the circumstances, this Court does not believe that the Sheriff's conduct in this case constituted contempt of the Circuit Court of Grant County. The circuit court relied upon a claimed violation of West Virginia Code § 50-1-14(a), which deals with the duty a sheriff owes to the Magistrate Court. Moreover, West Virginia Code § 50-1-14(a) defines a sheriff's duty to execute all civil and criminal process which may be *directed to such sheriff*. The order at issue in this case did not contain any direction to the sheriff regarding service of process.[4]

Further, the Appellant promised to effectuate service in a short time and could reasonably conclude that the problem was

**4.** This Court recognizes the deficiency in the form for emergency custody and will endeavor to create a supplement or addition to the form to provide express and written direction to a sheriff or other law enforcement officer for such service of process or other assistance as the court may

solved when a state trooper volunteered to undertake the task. The order was thereafter served by the state police.[5]

Under the unique facts of the present case, we find that the lower court exceeded its legitimate powers by holding the Sheriff in contempt of court. We find no violation of the Appellant's statutory duties.[6] The contempt order entered by the lower court is reversed.

Reversed.

wish to be afforded in a case. In the meantime, it is appropriate for any court to add to its emergency custody order such specific direction to a sheriff or other law enforcement officer as it deems appropriate to serve and effectuate its order.

5. This Court's determination in this case is not inconsistent with the rationale of other courts in examining alleged contempt violations within the context of service of process difficulties. In *In re Smith*, 205 Ga.App. 857, 424 S.E.2d 45 (1993), for instance, a woman had brought a proceeding against a sheriff for contempt regarding the sheriff's failure to arrest her former husband. The ultimate question was explained by that court as follows:

In light of the foregoing statutes, it is clear that a sheriff can be found in contempt of court by "neglecting" to perform his duties. Stated somewhat differently, a sheriff can be fined for contempt if he fails to perform his duties with "due diligence." Did the sheriff neglect to perform his duties? Did he fail to

act with due diligence? The answer to these questions lies in *Heard v. Callaway*, 51 Ga. 314 (1874).

In *Heard*, the Supreme Court of Georgia held that whether a sheriff neglected his duty "would depend on the good faith of his conduct, in view of the circumstances under which he acted, of which the court is to judge." *Id.* at 317. In determining whether the sheriff acted in good faith, the court is to exercise its sound discretion. *Id.*
424 S.E.2d at 46.

6. Our decision today does not condone any failure of a sheriff to render prompt assistance to the courts. In setting aside the instant contempt order, we do not mean to suggest that officers of the court can rely upon technicalities to refuse promptly to execute an oral order of the court given to a sheriff in open court or any order first made orally for expeditious execution to be promptly followed by a proper written order.